## HILL *v.* GILMAN.

The statutes of this State which prescribe the manner in which mortgages of goods and chattels shall be executed and recorded, must, in general, be strictly complied with.

Where the statute required the mortgage to be sworn to, and that the certificate of the justice who administered the oath should be recorded with the mortgage, and it appeared that the oath had been administered, but the justice, through inadvertence, neglected to sign the certificate, and the mortgage, with the defective certificate, was thus recorded—*Held*, that it was invalid against a *bonâ fide* creditor, who attached the property, notwithstanding he had knowledge of the mortgage as it appeared upon the record.

TRESPASS, for taking and carrying away one yoke of oxen, alleged to be the property of the plaintiff.

On the 6th day of January, 1857, Joseph F. Farrar made to the plaintiff a mortgage of certain personal property, including said oxen, then owned by Farrar, to secure the payment of his promissory note to the plaintiff for the sum of $238.

The mortgage was in due form in all respects, except that the certificate of the oath purporting to have been

administered to the parties was not signed by any magistrate, and the mortgage was recorded in that condition.

A day or two subsequent to the making and record of the mortgage, the oxen were attached by the defendant, as a deputy-sheriff, upon a' writ against Farrar, the mortgagor, and the property was sold by him on the execution which issued upon the judgment in said suit. At the time of the commencement of that suit the plaintiff therein had knowledge of the existence of the mortgage, as it appeared on the record, without the certificate of the oath being signed, but knew nothing of it otherwise.

The plaintiff offered to prove, by parol testimony, that the oath was duly administered to the mortgager and mortgagee by a justice of the peace. To this evidence the defendant objected, and it was ruled out by the court, and the plaintiff excepted.

The court thereupon ordered a verdict for the defendant, upon which judgment was rendered, and the plaintiff filed exceptions.

*Minot & Mugridge*, for the plaintiff.

*Stevens & Vaughan*, for the defendant.

EASTMAN, J. In *Ash* v. *Savage*, 5 N. H. 545, it was decided that possession by the mortgagee was not essential to the validity of a mortgage of goods and chattels. It was argued in that case that if the court should so decide, it would become necessary for the legislature to interfere, and correct, by a positive enactment, the evils that would result therefrom.

That decision was made in November, 1831; and at the next session of the legislature, in June, 1832, an act was passed, entitled " An act to prevent fraud in the transfer of personal property by mortgage," in which it was provided " that no mortgage of personal property hereafter made,

shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the said mortgage be recorded in the office of the clerk of the town where the mortgagor shall reside at the time of making the same." Laws, June session, 1832, ch. 80.

At the November session of the same year a further act was passed, providing that the mortgagee might be summoned as trustee of the mortgagor, and also providing that the property might be attached subject to the mortgage; likewise that the mortgagee, on demand, should render an account of the sum due.

Under these statutes it was held that a mortgage of personal property was good as between the parties to it, without any record or change of possession; but that it was invalid against any other person, unless possession was taken and retained by the mortgagee, or the mortgage was recorded where the mortgagor resided at the time of its execution; that symbolical delivery of possession was not sufficient, but the possession should be such as is required to be taken by a vendee after an absolute sale. *Smith* v. *Morse*, 11 N. H. 55.

In December, 1840, a further act was passed, providing that no mortgage of personal property should be valid except as between the parties thereto, unless the parties should take and subscribe an oath that the mortgage was made to secure the debt or liability specified in the condition, and for no other purpose. The form of the oath is given in the statute, and is substantially the same as that prescribed in the statutes now in force. That statute also provided that the certificate of the magistrate who should administer the oath should be appended to the mortgage and recorded therewith; but it does not in terms provide that the mortgage shall be invalid for the want of such certificate.

In the revision of the statutes in 1842, the provisions of

the acts of 1832 and 1840, upon this subject, were all substantially reënacted, with still further provisions.

In the first and second sections of the revision (Rev. Stat., ch. 132, secs. 1, 2), it is provided that personal property may be mortgaged agreeably to the provisions of the chapter, and that possession of the mortgaged property must be delivered to and retained by the mortgagee, or the mortgage be recorded in the town where the mortgagor resides.

The third and fourth sections provide that the mortgagor and mortgagee shall make and subscribe an affidavit, the form of which is given, stating that the mortgage is made for the sole purpose of securing the debt or indemnifying against the liability set forth in the condition, and stating also that the debt and liability are just and true.

The fifth section is as follows: "Every such affidavit, *with the certificate of the justice who administered the oath,* shall be made upon or appended to such mortgage, and recorded therewith."

The sixth section provides that all willful falsehood committed in any such affidavit, shall be deemed to be perjury, and punished accordingly.

And the seventh is as follows: "No such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and *recorded in the manner* herein prescribed."

There are nine other sections in the chapter. Some of them provide for penalties in case of the sale or second mortgage of the property by the mortgagor. Others for the redemption of the property mortgaged, and also for the sale of the same by the mortgagee, after condition broken. But none of these provisions are necessary to be stated here.

In 1844 an act was passed providing for the record of such mortgages in unincorporated places; and in 1845 an

act providing that where a copartnership is a party to the mortgage the affidavit may be made and sworn to by any member of the firm, and in 1858 an act making provision for the record of mortgages where the mortgagor resides out of the State. In such cases the mortgages are authorized to be recorded in the towns where the property is situated. Pamphlet Laws, ch. 2112.

Such is the history of legislation upon this subject; and while, upon one hand, it appears to have been the intention to uphold mortgages of chattels, that the owners of personal property might enjoy whatever of advantage they rightfully could from the credit obtained thereby, and that creditors might secure themselves without breaking up the business of their debtors by taking the property from their possession; on the other hand, in view of the fraud which often attends this species of contracts, the legislature have gone on from step to step till the provisions of the statutes have been made quite specific and stringent. And we think it the duty of the court to carry out what appears to have been the design of the legislature, without adhering too closely to all the analogies which might perhaps be traced between mortgages of personal and real estate. Hitherto this seems to have been the inclination of the court when questions have arisen, where the express provisions of the statute appeared to require a departure from the rules established in the construction of deeds of real estate. Thus in *Stowe* v. *Meserve*, 13 N. H. 46, which was a case arising under the statute of 1832, where the creditor had an execution against the mortgagor of the property, and upon going to seize it was told by the mortgagor before actual seizure that it was mortgaged, it was held that such notice was not sufficient to put the party on inquiry, and the query is suggested whether actual knowledge of the existence of the mortgage communicated at that time would avail.

In *Belknap* v. *Wendell*, 21 N. H. 92, the question was

whether a mortgage which had been given of the property attached was valid against creditors. There was evidence tending to show that the notes set forth in the condition of the mortgage were given partly for a debt and partly on account of liabilities which the mortgagees were under for the mortgagor. The court instructed the jury that the notes must have been given for a debt then actually subsisting for the full amount of the notes, and that if but a part of the consideration of the notes was for a debt, and one object of the notes and mortgage, as intended and understood by the parties, was to indemnify against liabilities which the mortgagees were under as sureties, the mortgage was void as to creditors, although the parties might not have had any actual design to defraud any one. And this ruling of the court was sustained upon a transfer of the case to the court above.

*Bell*, J., in delivering the opinion of the court, speaking of mortgages of real estate, remarks, that the general rule is, that, if the notes are valid, the mortgage, so far as it depends on them, is valid; and that the same rules would be applied to mortgages of personal property were it not for the statute governing such mortgages; but that it is not so under that statute. He also says : " By the express provision of the statute, the true character of the liability, as it then existed, must be stated in the condition, and verified by oath, or the mortgage cannot be valid against creditors." " Neither does it make any difference that the claim secured by the mortgage is, in part, well described as a debt, if a part of the claim described as a debt is, in truth, not a debt, but a contingent liability. The statute is express that no mortgage shall be valid unless sworn to as prescribed. It may operate hardly that a failure to comply with the terms of the statute in regard to a part of the claims secured, should vitiate the whole mortgage, but this hardship cannot change the legal effect of the statute."

And we think that in law this must be so, whatever might be the decision of the court upon proceedings in equity in some cases that might be supposed. So far as creditors are to be affected, the statute must be complied with in all its material and substantial requirements. As to creditors, the mortgage is but the creature of the statute, and although it may be held that actual knowledge of the existence of a mortgage may supersede the necessity of the record, yet it must be upon the ground that such knowledge is equivalent to the record, and that it would be a fraud upon the mortgagee to hold it otherwise.

It will be recollected that the seventh section of the statute provides that the mortgage shall not be valid, except between the parties, unless possession follows, or it is sworn to and recorded in the manner prescribed. The " manner prescribed" is, that an affidavit shall be made and subscribed by the parties, either upon the mortgage itself or upon a paper attached thereto; and that that affidavit, " *with the certificate of the justice who administered the oath,*" shall be recorded with the mortgage.

Upon the mortgage in question here there was no certificate of any oath signed by a justice, and the mortgage was recorded without such certificate. This was a clear failure to comply with the provisions of the statute. So far as the mortgage itself showed, no oath had been administered and no affidavit had been made, and therefore an essential and material requirement of the statute had been neglected. The certificate of the justice is required to be recorded as much as any other part of the instrument.

From the manner in which the case is drawn we must understand that the oath had in fact been administered; but of this the creditor had no knowledge, and the case so finds. The record gave him notice of the existence of a mortgage, without the affidavit required by statute; such a mortgage as would have been good under the act of 1832, or such as was good between the parties at the time

Hill *v.* Gilman.

it was executed. But the record was not notice of the existence of a mortgage executed and recorded according to the requirements of the statute, but of one which was, by the express provisions of law, invalid as to creditors.

It appears to us that to hold this to be a good mortgage as against the defendant, who stands in the position of a *bonâ fide* creditor of the mortgagor, would be to evade, if not indeed to override, a material provision of the statute. If this requirement can be dispensed with, without affecting the validity of the mortgage, then may others also. Suppose the parties should take the oath, but through inadvertence neglect to sign it; or suppose the affidavit should be made upon a paper distinct from the mortgage, and, by some mischance, not be attached to it, and the mortgages, with these defects, be recorded, are we to hold them good against creditors? Other suppositions could be made by which other requirements might be neglected, and by following the principle out we might perhaps find ourselves back to the common law mortgage. To carry out the intention of the legislature, we think that all the material requirements of the statute must be complied with; that the certificate of the justice who administered the oath is a matter material to be made and recorded; and that, inasmuch as it was not done in the present instance, the mortgage was invalid as to the creditor. The exceptions must consequently be overruled, and the

*Judgment affirmed.*