Hillsborough,
June 26, 1936.

HENRY LENZ *v.* STANDARD OIL COMPANY OF NEW YORK.

SAME *v.* EMERY W. BAILEY.

*Sullivan & Sullivan (Mr. Thomas E. Dolan* orally), for the plaintiff.

*Hamblett & Hamblett (Mr. Robert B. Hamblett* orally), for the defendant corporation.

*McLane, Davis & Carleton (Mr. William L. Phinney* orally), for the defendant Bailey.

BRANCH, J. The defendant corporation takes the position that "no common law exception should be made to the general principle that there must be privity between the plaintiff and the defendant and that a seller is under no liability to anyone other than a purchaser for the character of the goods he sells." This suggestion

cannot be seriously entertained. Although courts continue to reiterate the conventional formula which states: "The general rule is that a contractor, manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of the articles he handles," (*Huset* v. *Company*, 120 Fed. 865) it has often been observed that "The exceptions to this rule are quite as well established as the rule itself." *Victory Sparkler &c. Co.* v. *Latimer*, 53 Fed. (2d) 3. These exceptions are so numerous and so important that it may be doubted whether accuracy today permits the description of the above principle as "the general rule." It is well understood that the rule does not apply in the case of articles which are "recognized as inherently dangerous to life, limb or property" (*Guinan* v. *Company*, 267 Mass. 501) or to articles which, by reason of their nature or the manner of their use, are peculiarly likely to become dangerous if defective. *MacPherson* v. *Company*, 217 N. Y. 382. The exceptions to the so-called "general rule" include chemicals, drugs and medicines, foods and beverages, tobacco, explosive substances, weapons, automobiles and many other miscellaneous articles. For cases sustaining and illustrating these exceptions, see the exhaustive notes in 17 A. L. R. 672; 63 A. L. R. 340; 86 A. L. R. 947; 88 A. L. R. 527. As the law stands today it is more accurate to say that, as a general rule, "An obligation rests upon the one who delivers an article, which he knows, or ought to know, to be peculiarly dangerous, to give notice of its character or bear the natural consequences of his failure to do so." *Leavitt* v. *Company*, 196 Mass. 440, 444.

For an enumeration of the elements which enter into the problem of a vendor's liability to the purchaser of potentially dangerous articles, the plaintiff refers us to the American Law Institute's Restatement of the Law of Torts, Section 388, which reads in part as follows: "One who supplies directly or through a third person a chattel for another to use, is subject to liability . . . for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so." This quotation embodies a conservative statement of the prevailing law in this country as it exists today.

Judged in the light of the foregoing principles, we think that non-suits were properly ordered in both of the present cases. We rest our decision upon the fundamental ground that there was no evidence to charge the defendants with knowledge that the ethyl gasoline from which the plaintiff's injury is claimed to have resulted, was likely to be dangerous to life or limb when used for the purpose for which it was supplied.

It must be assumed that the defendant corporation was chargeable with knowledge of the chemical composition of the substance which it sold and of the harmful effects, if any, likely to result to human beings from contact with it. *Gobrecht* v. *Beckwith*, 82 N. H. 415, 420; 86 L. R. A. 947. Nevertheless, some proof that ethyl gasoline in fact possessed potentialities of harm to human beings from external contact sufficient to call for protective action by the defendants was an essential element in the plaintiff's case. *Karr* v. *Inecto, Inc.* 247 N. Y. 360. The mere fact that the plaintiff suffered injury is not sufficient to justify such a conclusion. *Gage* v. *Railroad*, 77 N. H. 289, 294, 295; Hening, N. H. Digest, 1058; *Leavitt* v. *Company, supra*; *Dupont &c. Co.* v. *Duboise*, 236 Fed. 690.

The only testimony, ostensibly of a scientific character, upon this point came from a doctor called as a witness by the plaintiff, who testified that "it is well known in the medical profession that tetra ethyl lead is an active poison." The same witness also testified as follows: "Q. It is also well known in your profession that tetra ethyl lead gasoline is an irritant and a poison? A. I think so. . . . Q. Do you know how much lead was in this preparation? A. One to one thousand. Q. One to one thousand or thirteen hundred? A. That is what I think it is. . . . Q. Do you know how concentrated lead has to be in gasoline to be dangerous to the ordinary person? A. I don't know."

This testimony was insufficient to justify a finding that the gasoline in question contained a sufficient quantity of lead to cause injury to human beings by external contact. The fact that tetra ethyl of lead is an "active poison" does not involve the conclusion that external contact therewith is injurious to human beings. It is common knowledge that such contact with many materials, known to be poisonous if taken internally, may be entirely harmless. The extensive use of spraying materials to combat insect pests and plant diseases bears witness to this fact.

By the same token, mere knowledge that a given substance is an irritant to human flesh imports no suggestion of actual danger from

contact with it. Persons who find woolen underwear uncomfortable know that this is so. In this respect the present case is similar to *Cliff* v. *Company*, 83 Cal. App. 424, in which the plaintiff sought to recover for the loss of an eye claimed to have been caused by a lime sulphur spray solution manufactured by the defendant. In that case it appeared that the material was "only slightly caustic; that it would irritate the flesh but not violently." Under these circumstances it was held that the defendant was not liable for failure to give warning of such unexpectable consequences as were suffered by the plaintiff in that case. The foregoing evidence was, therefore, insufficient to sustain a conclusion that ethyl gasoline is inherently dangerous to human beings upon external contact, and *a fortiori* insufficient to charge the defendants with knowledge of such a danger.

It is true that the defendant Bailey, who was called as a witness by the plaintiff, indulged in some speculations which would undoubtedly have been damaging to his case if it had gone to the jury, but they were insufficient to supply the missing link in the plaintiff's chain of proof. His testimony upon direct examination was as follows: "Do you know why there was a warning placed on those tanks? A. I suppose it was placed for a precaution there. Q. It was placed there because there was some danger in allowing that kind of gas to get on your skin or flesh, wasn't it? A. I wouldn't say that, no. Q. Why do you think it was put on there? A. As a precautionary measure. Q. As a precaution against what? A. As a precaution against perhaps possibilities. Q. Possibilities of what? A. Possibility of getting—Possibility, I suppose, of perhaps, from poisoning from the lead. Q. Yes. So you knew there was a possibility of danger of poisoning from the lead? A. Yes, sir." Upon later examination by plaintiff's counsel he testified as follows: "Q. What did you mean, when you said before, you were aware there was a poisonous substance in the gasoline? A. The mere fact it contained lead, of course, I assumed it was poisonous. Q. To you, yourself, that indicated it was poisonous? A. Yes; it was if used in a certain way. Q. And, as you said before, you were aware that it might be dangerous to have it come on your flesh, although that had not been your personal experience? A. It never was my experience." It thus appears that while the defendant Bailey claimed to know that the use of ethyl gasoline involved a "possibility of danger" of lead poisoning, if employed in some obscure and undisclosed manner, he disclaimed any knowledge that there was danger in allowing it

"to get on your skin or flesh," despite the misquotation of his direct testimony by plaintiff's counsel upon redirect examination. It was not claimed that the plaintiff suffered from lead poisoning.

The foregoing testimony clearly furnished no basis for a finding that wetting the skin with ethyl gasoline is dangerous to human beings. We therefore conclude that there is "lacking in the plaintiff's case the essential element of knowledge on the part of the defendant of the particular danger of which complaint is made, or of facts from which such knowledge might fairly be inferred." *Leavitt* v. *Company, supra,* 444.

Since nonsuits were properly granted in both cases upon the ground above stated, it is unnecessary for us to pass upon the other questions presented by this record, (1) whether the evidence would sustain a finding that the draining of the gasoline from the tank of the truck was a foreseeable incident of its use as a motor fuel, and (2) whether the sign upon the pump constituted an adequate warning of possible dangers.

*Exceptions overruled.*

All concurred.