Hillsborough-southern judicial district
No. 95-803

PETER LARAMIE & a.

v.

SEARS, ROEBUCK & COMPANY

March 18, 1998

*Hamblett & Kerrigan, P.A.*, of Nashua (*John P. Griffith* and *Robert D. Lietz* on the brief, and *Mr. Lietz* orally), for the plaintiff.

*Hall, Morse, Anderson, Miller & Spinella, P.C.*, of Concord (*Douglas J. Miller* on the brief), and *Donahue & Donahue*, of Lowell, Massachusetts (*Joseph D. Regan* orally), for the defendant.

JOHNSON, J. The defendant, Sears, Roebuck & Company (Sears), appeals the verdict reached in this products liability case following a jury trial in Superior Court (*Brennan*, J.). Sears asserts that the trial court erred in denying Sears' motions for directed verdict, in allowing one of the plaintiffs' witnesses to testify as an expert, in admitting into evidence an exemplar pictograph warning, in precluding Sears' counsel from conducting cross-examination about a prior lawsuit arising out of the same incident, in allowing a medical journal article to be introduced into evidence, and in denying Sears' motions for contribution and costs. We affirm.

This action was brought by Peter and Lynn Laramie, individually and on behalf of their minor daughter, Emma Laramie, for damages

arising out of an incident in which Emma sustained serious scald burns while being bathed in a kitchen sink. The plaintiffs alleged counts of negligence, failure to warn, and strict liability against Sears as seller of the dishwasher that plaintiffs claimed caused their daughter's injuries.

From the evidence presented at trial, the jury could have found the following facts. On the evening of October 28, 1991, the Laramies had dinner at their apartment in Nashua. After the dishes had been cleared away and the dishwasher started, Mrs. Laramie proceeded to bathe nine-month-old Emma in the kitchen sink. Neither Mr. nor Mrs. Laramie could remember at trial whether either of them had cleared the garbage disposal after dinner that night. While Mrs. Laramie was bathing Emma, wastewater from the dishwasher backed up into the sink causing Emma to sustain a full-thickness burn to her perineal area that required skin grafting.

At trial, the plaintiffs argued that Sears was negligent in failing to warn them that scalding hot water from the dishwasher could back up into the sink and that Sears was strictly liable for their damages because the lack of such a warning made the dishwasher unreasonably dangerous. Sears counterclaimed, arguing that if found liable, it was entitled to full indemnification or contribution from Mr. and Mrs. Laramie because they were negligent in bathing Emma. The jury found for the plaintiffs on the negligence claim and awarded Emma $40,000 for her injuries. The jury awarded nothing, however, to Mr. and Mrs. Laramie for their individual claims, and found for Sears on the strict liability claim. The jury also found that Mr. and Mrs. Laramie were negligent and attributed eighty-five percent of the total negligence to them and fifteen percent to Sears. The jury ruled against Sears, however, on its counterclaim.

Sears first argues that the trial court erroneously denied its motions for directed verdict because the evidence presented at trial was insufficient to support a verdict in the plaintiffs' favor. Although Sears challenges the denial of directed verdicts on both the negligence and strict liability claims, we need only consider the one on which Sears did not prevail, i.e., the negligence claim. In order to establish Sears' negligence, the plaintiffs had the burden of proving "that the defendant owed the plaintiff[s] a duty, that the duty was breached, that the plaintiff[s] suffered an injury, and that the defendant's breach was the proximate cause of the injury." *Ronayne v. State*, 137 N.H. 281, 284, 632 A.2d 1210, 1212 (1993).

Sears argues that it was entitled to a directed verdict because the plaintiffs failed to introduce sufficient evidence of foreseeability or causation.

A trial court may grant a directed verdict only when the evidence and all reasonable inferences therefrom, construed most favorably to the party opposing the motion, would not enable a jury to find for that party. The trial court cannot weigh the evidence or judge the credibility of the witnesses, and, if the evidence is conflicting or several reasonable inferences may be drawn, the motion for a directed verdict should be denied.

*Arthur v. Holy Rosary Credit Union,* 139 N.H. 463, 465, 656 A.2d 830, 832 (1995) (quotations, citations, and brackets omitted). Our standard of review on this issue is whether the trial court abused its discretion. *See id.* We cannot conclude that the sole inference supported by the evidence, viewed most favorably to the plaintiffs, was so overwhelmingly in favor of Sears that it was an abuse of the trial court's discretion to let the case go to the jury. *See Bronson v. The Hitchcock Clinic,* 140 N.H. 798, 800, 677 A.2d 665, 667-68 (1996).

Sears asserts that it was undisputed that prior to Emma Laramie's injury, it had no actual notice of any accident of this nature occurring. There was conflicting evidence, however, as to whether Sears should have known of the risk. We have recognized that "[a]n obligation rests upon the one who delivers an article, which he knows, *or ought to know,* to be peculiarly dangerous, to give notice of its character or bear the natural consequences of his failure to do so." *Lenz v. Company,* 88 N.H. 212, 214, 186 A. 329, 330 (1936) (emphasis added) (quotation omitted).

Arnold Robert Kays, a witness called by Sears who had worked for the manufacturer of the dishwasher at issue on matters of design and safety, testified that he knew that dishwashers could empty into garbage disposals and could back up into sinks and that such backups did occur on occasion. Mr. Kays also testified that his company had recommended that the water in the dishwasher reach 140 degrees Fahrenheit in order to properly wash dishes. Plaintiffs' expert witness, Leonard C. Mandell, testified that it had been generally known in the scientific community since the 1940s or 1950s, and that the information had been widely disseminated in the 1960s, 1970s, and 1980s, that exposure to 140 degree water could cause a full-thickness burn in five to seven seconds. Although Mr. Kays disclaimed any knowledge that mothers bathed infants in kitchen sinks, there was other evidence, including the testimony of Sears' witness Professor Ralph Lipsey Barnett, that such a practice was accepted and even recommended by some authorities.

On the issue of causation, Sears argues that the plaintiffs failed to show that the danger presented by the dishwasher was not obvious

or commonly known. Notwithstanding the apparent incongruity of arguing that a risk that was not reasonably foreseeable by Sears was, however, commonly known and obvious to the plaintiffs, Sears contends that "[t]he failure to warn of risks already apparent to plaintiffs who were intelligent, educated users, could not be the proximate cause of plaintiffs' injuries."

Deposition testimony of Mrs. Laramie introduced at trial suggested that she had some awareness that dishwashers could back up due to a clogged disposal, but also indicated that her concern with such a backup was that debris from the disposal would enter the dishwasher. Mr. Laramie testified that he knew how the dishwasher worked in principle, and knew that the dishwasher and disposal were somehow connected, even though he had never looked to see how they were hooked up.

Plaintiffs' expert witness, Mr. Mandell, stated his opinion that the dishwasher's risk was not open and obvious, primarily because the average person does not know the temperature at which water can scald and that dishwasher wastewater reaches that temperature. Mr. Laramie testified that although he knew that the water in a dishwasher had to be hot in order to properly clean dishes, he did not know what temperature the water reached. Mr. and Mrs. Laramie's testimony also indicated that they had never observed a dishwasher backup before. Finally, Mrs. Laramie testified that had there been a warning on the dishwasher, she would not have bathed Emma in the sink while the dishwasher was running. Given such conflicting evidence on the issues of foreseeability and causation, we cannot say that the trial court abused its discretion in denying Sears' motions for directed verdict. *See Arthur*, 139 N.H. at 465, 656 A.2d at 832.

We note Sears' argument in its brief that although the jury found on the strict liability claim that the plaintiffs' use of the dishwasher was a misconduct or misuse that was unforeseeable by Sears, the jury "improperly ignored the lack of foreseeability evidence in unreasonably returning its negligence verdict for the infant alone." We need not decide, however, whether the verdicts are inconsistent because that would not assist us in determining whether Sears should have been granted a directed verdict. At most, an inconsistency between two verdicts indicates that one of them is wrong. *See State v. Brown*, 132 N.H. 321, 329, 565 A.2d 1035, 1039-40 (1989). It does not compel a finding that there was not enough evidence to send the case to the jury at all, especially considering that the alleged inconsistency tells us nothing about which verdict is

wrong. *Id.* at 329-30, 565 A.2d at 1040; *see also Daigle v. City of Portsmouth*, 129 N.H. 561, 576, 534 A.2d 689, 696-97 (1987) (applying rule on inconsistent verdicts to civil case); *cf. Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977) (noting that there is a "significant difference between the rigorous standard for a directed verdict or judgment n.o.v. and the more lenient test for a new trial").

It does not appear on the record before us that Sears moved to set aside the verdicts or for a new trial on the basis of inconsistent verdicts. Therefore, the issue of inconsistent verdicts is not properly before us, and we adhere to our ruling· that the motions for directed verdict were properly denied. *Cf. Hauser v. Calawa*, 116 N.H. 676, 677, 366 A.2d 489, 491 (1976) (ground for setting aside verdict not raised below is not properly before this court); *Hewett v. Association*, 73 N.H. 556, 561-62, 64 A. 190, 191 (1906) (inconsistent verdicts must stand where neither party moved below to set aside verdicts on ground of mistrial).

■ Sears next argues that the trial court erred in allowing Mr. Mandell to testify as an expert witness for the plaintiffs. Specifically, Sears asserts that although Mr. Mandell was qualified to testify about mechanical defects, he lacked the necessary qualifications to testify about the need for a warning. We disagree.

> The trial court has broad discretion to permit a witness to offer expert testimony. If the witness, by either study or experience, has knowledge on the subject-matter of his or her testimony so superior to that of people in general concerning it that the witness's views will probably assist the trier of fact, the admission is not error.

*O'Donnell v. Moose Hill Orchards*, 140 N.H. 601, 605, 670 A.2d 1030, 1033 (1996) (quotation omitted); *see* N.H. R. EV. 702. We will not disturb the trial court's admission of expert testimony unless the court clearly abused its discretion. *O'Donnell*, 140 N.H. at 605, 670 A.2d at 1033.

Mr. Mandell testified on *voir dire* that he had several degrees in the field of thermodynamics, and had taken additional courses to stay current in his field. His coursework included material on warnings. He also belonged to certain organizations that dealt with warnings and testified that warnings was "one of [his] specialties." In addition, he had given expert testimony on warnings and had developed warnings in other cases.

Sears nevertheless argues that Mr. Mandell's opinion was not reached "scientifically" and could not be tested empirically. Sears

argues, for instance, that Mr. Mandell did not conduct frequency or statistical analyses or use a focus group study in arriving at his opinion. We note that while Sears' attorney chose not to cross-examine Mr. Mandell about these issues on *voir dire*, he did cross-examine Mr. Mandell extensively before the jury. *Cf. O'Donnell*, 140 N.H. at 606, 670 A.2d at 1033 ("The appropriate method of testing the basis of an expert's opinion is by cross-examination of the expert." (quotation omitted)). We cannot say that the trial court abused its discretion in allowing Mr. Mandell to testify as an expert on warnings. *See id.* at 606-07, 670 A.2d at 1033.

■ Sears also contends that the trial court erred in admitting into evidence an exemplar pictograph warning created by Mr. Mandell and forwarded to Sears' counsel eleven days prior to trial. Sears argues that the disclosure of the exemplar warning a month after discovery closed and after Mr. Mandell stated in his deposition that he had not been asked to prepare an exemplar pictograph was untimely and constituted unfair surprise to Sears. We disagree. At his deposition, Mr. Mandell produced a draft warning he had created. The draft contained a written warning and a notation for a pictograph that stated: "Baby in Sink Scald[in]g $H_2O$ + Dishwasher." The exemplar admitted at trial did not differ substantially from this draft except that it contained an actual pictograph of a baby in a sink. Accordingly, we hold that the trial court did not err in admitting the exemplar warning.

■ Sears further argues that the trial court erred in precluding Sears' counsel from cross-examining the plaintiffs and their expert as to the plaintiffs' prior lawsuit against their landlord arising out of the same incident involved here. In that lawsuit, the plaintiffs brought claims of strict liability, breach of warranty, and negligence against their landlords for owning, maintaining, and failing to warn plaintiffs of an unsafe plumbing system that included the dishwasher, garbage disposal, and sink. Citing *Bellevance v. Company*, 99 N.H. 10, 11, 104 A.2d 882, 882 (1954), Sears argues that the trial court should have allowed Sears' counsel to inquire on cross-examination about inconsistent theories asserted in the separate lawsuits. We disagree.

We noted in *Bellevance* that "[i]t is unquestionably the law that if the writ showed an inconsistency with the plaintiff's position as taken at the trial, it was properly admitted; otherwise, it was incompetent." *Bellevance*, 99 N.H. at 11, 104 A.2d at 882. We conclude, however, that the prior lawsuit was not inconsistent with the present one. We addressed similar circumstances in *Masterson*

*v. Railway,* .83 N.H. 190, 193, 139 A. 753, 756 (1927), where we stated:

> [T]he plaintiff's original claim that both Fraser and the railway were negligent does not amount to inconsistency with the amendment which alleges the railway's negligence but not Fraser's. The amendment does not charge that only the railway was negligent but charges its negligence regardless of Fraser's. There is therefore no inconsistency in the pleadings before and after their amendment.

Similarly, the instant lawsuit alleges Sears' negligence regardless of the negligence of plaintiffs' landlords and is not inconsistent with the prior action. We therefore reject Sears' argument, and because the trial court reached the same result on different reasoning, we uphold the trial court's decision on this issue. *See Mathena v. Granite State Ins. Co.*, 129 N.H. 249, 251, 525 A.2d 284, 285 (1987).

Sears next argues that the trial court erred in allowing the plaintiffs to introduce into evidence a medical journal article discussing Emma's accident and a similar incident. Counsel for both parties agreed to offer Sears' version of the article along with a cover letter dated December 11, 1992, from Dr. Robert L. Sheridan of Shriners Burns Institute stating that to Shriners' knowledge, this was the first report of a burn of this type. Sears asserts that the article, which was obviously published after Emma's injury, was introduced to show that Sears had prior notice of such occurrences and that admission of the article was highly prejudicial.

■ "Evidentiary rulings are within the sound discretion of the trial court. . . . [and we] will not disturb the trial court's rulings unless they are clearly untenable or unreasonable to the prejudice of the complaining party's case." *Clipper Affiliates v. Checovich*, 138 N.H. 271, 275, 638 A.2d 791, 794 (1994) (citation omitted). The plaintiffs' counsel stated that the article was offered to counter Sears' argument that the incident was a freak accident that had never happened before and would never happen again, and therefore the article was relevant to whether a warning was necessary. Sears' counsel also emphasized in his closing argument that the article was the first publication regarding these accidents. Under these circumstances, we cannot say that admission of the article prejudiced Sears; thus, we hold that the trial court did not abuse its discretion in allowing the article into evidence.

Sears further argues that the trial court erred in denying its post-trial motion for contribution. *See* RSA 507:7-f, :7-g (1997).

Sears sought eighty-five percent contribution from the Laramies on the ground that the jury found Mr. and Mrs. Laramie eighty-five percent negligent and Sears fifteen percent negligent. The plaintiffs objected, arguing that the jury had already decided the contribution issue against Sears by finding, by special verdict, that Sears had not proved its counterclaim against the Laramies.

On appeal, both parties recognize the apparent inconsistency in the special verdicts and urge us to reconcile them, albeit to different ends. *See DeRoy v. Copp*, 123 N.H. 13, 15, 455 A.2d 1034, 1036 (1983) ("When a verdict form contains ambiguous language, it should, if possible be construed so as to effect the jury's intent."). We decline to do so, however, because we are unable to ascertain with certainty the jury's intent. *See id.* at 17, 455 A.2d at 1037. The standard remedy in this situation would be to remand for a new trial; however, it appears that Sears neither moved for a new trial below nor asks for one now. Rather, Sears asks us to find it entitled to contribution. On the record before us, we cannot say that Sears is entitled to contribution as a matter of law, and we therefore affirm the trial court's denial of Sears' motion.

Finally, Sears argues that the trial court abused its discretion in denying Sears' motion for costs. Superior Court Rule 87(a) provides that "[c]osts shall be allowed as of course to the prevailing party as provided by these rules, unless the Court otherwise directs." Sears argues that because the jury found for it on the strict liability claim and the individual claims of Mr. and Mrs. Laramie, and found for the plaintiffs on only the negligence claim, Sears prevailed on two of the three claims and is entitled to two-thirds of its total costs. We disagree.

■ Where separate and distinct causes of action have been tried in one suit, we have allowed a party to recover costs for those issues on which that party prevailed. *See Smith v. Wiggin*, 52 N.H. 112, 119 (1872); *Meacham v. Jones*, 10 N.H. 126, 129 (1839). This, however, is not such a case. The "prevailing party" concept of Superior Court Rule 87(a) incorporates the general rule we stated long ago: "[I]f the plaintiff succeed on any issue entitling him to any part of his claim, he alone is permitted to tax cost[s]." *Brown v. Smith*, 1 N.H. 36, 38 (1817). Thus, the trial court did not err in denying Sears' motion for costs.

Having reviewed the record regarding Sears' remaining arguments, we find that they are without merit and warrant no further

discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.