Strafford
No. 95-350

BRUCE BUCKINGHAM, ADMINISTRATOR OF THE ESTATE
OF ROXANNE RAMSEY-BUCKINGHAM

v.

R. J. REYNOLDS TOBACCO CO. & a.

May 29, 1998

*Stephen R. Fine & Associates*, of Manchester (*Stephen R. Fine* on the brief and orally), for the plaintiff.

*Ransmeier & Spellman*, of Concord (*Steven E. Hengen* and *R. Matthew Cairns* on the defendants' joint brief), and *Jones, Day, Reavis & Pogue*, of Cleveland, Ohio (*Richard G. Stuhan & a.* on the defendants' joint brief), for defendant R. J. Reynolds Tobacco Co.

*Sulloway & Hollis*, of Concord (*Edward M. Kaplan* on the defendants' joint brief and orally for all defendants), and *Shook, Hardy & Bacon*, of Kansas City, Missouri (*Walter L. Cofer & a.* on the defendants' joint brief), for defendant Lorillard Tobacco Company.

*Devine, Millimet & Branch*, of Manchester (*Matthias J. Reynolds* on the defendants' joint brief), for defendant Philip Morris Incorporated.

*McNeil & Taylor*, of Dover (*R. Peter Taylor* on the defendants' joint brief), and *Latham & Watkins*, of New York, New York (*Francis K. Decker* and *James Copley* on the defendants' joint brief), for defendant Liggett & Myers, Inc.

*Ouellette, Hallisey, Dibble & Tanguay*, of Dover (*Dennis L.. Hallisey* on the defendants' joint brief), and *King & Spalding* of· Atlanta, Georgia (*William E. Hoffman* and *David Onorato.* on the defendants' joint brief), for defendant Brown & Williamson Tobacco Corporation.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the defendants' joint brief), and *Chadbourne & Parke*, of New York, New York (*Bruce G. Sheffler* and *Debra Barnhart* on the defendants'· joint brief), for defendant The American Tobacco Company.

*Sanders & McDermott*, of Hampton (*Wilfred L. Sanders, Jr.* on the defendants' joint brief), for defendant Prescott Farms, Inc.

HORTON, J. The plaintiff, Bruce Buckingham, administrator of the estate of Roxanne Ramsey-Buckingham, appeals an order of the Superior Court (*Mohl*, J.) granting the motion to dismiss filed by the defendants, R. J. Reynolds Tobacco Co., Philip Morris Incorporated, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, The American Tobacco Company, Liggett & Myers, Inc., and Prescott Farms, Inc. The plaintiff appeals the trial court's rulings that bystanders may not recover on a theory of strict liability in a product liability suit, that the plaintiff failed to allege that the defendants' products were defective, and that New Hampshire does not recognize a tort claim based on the RESTATEMENT (SECOND) OF TORTS § 389 (1965). We affirm in part, reverse in part, and remand.

Count I of the plaintiff's writ of summons is a strict liability claim based on the RESTATEMENT (SECOND) OF TORTS § 402A. The plaintiff alleged that Ms. Ramsey-Buckingham was diagnosed with terminal lung cancer resulting from her exposure to environmental tobacco smoke (ETS) from cigarettes manufactured or sold by the defendants. Although Ms. Ramsey-Buckingham did not smoke cigarettes or use tobacco products, the plaintiff asserts that it was foreseeable by the defendants that bystanders, like Ms. Ramsey-Buckingham, would be exposed to ETS. The plaintiff contends that the cigarettes made or sold by the defendants were defective because they were in an unreasonably dangerous condition, in that the cigarettes were dangerous beyond the expectations of the ordinary consumer and the utility of smoking did not outweigh the risk caused by ETS. The plaintiff did not allege a defect in the cigarettes other than their dangerous character.

Count II of the plaintiff's claim is based on the RESTATEMENT (SECOND) OF TORTS § 389. The plaintiff additionally alleged that

the defendants knew or should have known that it was unlikely that their products would be made reasonably safe prior to their customary and intended use, and that it was foreseeable that Ms. Ramsey-Buckingham would be endangered by ETS from the defendants' cigarettes.

The defendants moved to dismiss for failure to state a claim upon which relief may be granted. The trial court dismissed count I because, *inter alia*, the writ failed to allege separately that the cigarettes were defective and that the defect caused the cigarettes to be unreasonably dangerous.

As for count II, although the trial court acknowledged that the facts alleged by the plaintiff fall squarely within a claim based on section 389 of the RESTATEMENT, the court dismissed this claim because New Hampshire has not recognized a cause of action based on section 389.

■ "In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to him." *MacLeod v. Ball*, 140 N.H. 159, 160, 663 A.2d 632, 633 (1995). If the facts pled do not constitute a basis for legal relief, we will uphold the granting of the motion to dismiss. *See Higgins v. Cushman S. Colby, C.P.A., P.A.*, 140 N.H. 765, 767, 674 A.2d 971, 973 (1996).

*I. Strict Liability Under Section 402A*

■ With regard to count I of the plaintiff's writ, we hold that the plaintiff has failed to state a claim upon which relief may be granted because the complaint does not allege that the product was "defective" and "unreasonably dangerous" as separate elements. Instead, the plaintiff alleges only that "[t]he cigarettes sold by the defendants were defective or unsuitable at the time of sale in that they were in an unreasonably dangerous condition for innocent bystanders such as the plaintiff." The plaintiff's argument that "defect" is not a "separate and distinct element of proof" from the "unreasonably dangerous" element is not borne out by the language of section 402A, the history of its adoption, or our case law.

We have adopted the tort of strict liability as set out in the RESTATEMENT (SECOND) OF TORTS § 402A. *See Buttrick v. Lessard*, 110 N.H. 36, 38-39, 260 A.2d 111, 113 (1969). Section 402A imposes liability for selling "any product in a defective condition unreasonably dangerous to the user or consumer" when the product causes injury to the user or consumer. In other words, "the basis of

any claim involving products liability, is an allegation of a defect associated with the product, which makes the product unreasonably dangerous, and causes the injury for which recovery is sought." *Gianitsis v. American Brands, Inc.*, 685 F. Supp. 853, 856 (D.N.H. 1988).

If the plaintiff were correct that a product is *per se* defective if it is unreasonably dangerous, then it would be redundant for section 402A to include both the terms "defective" and "unreasonably dangerous."

> [T]he operative phrase used in § 402A of the RESTATE-MENT (SECOND) OF TORTS — a product "in a defective condition unreasonably dangerous" — was deliberately chosen to make it clear that the product must be defective, and that the manufacturer of a product that may involve some danger, but that is not defective, will not be held liable.

*Patterson v. Gesellschaft*, 608 F. Supp. 1206, 1212 (N.D. Tex. 1985) (footnote omitted); *see Gianitsis*, 685 F. Supp. at 858. *See generally* AMERICAN LAW INSTITUTE, PROCEEDINGS 1961 87-88 (discussing whether an unreasonably dangerous product was *per se* defective).

Comment *i* to section 402A supports this reading of strict liability: "The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer." RESTATEMENT (SECOND) OF TORTS § 402A comment *i* at 352. The comment cites several products, such as tobacco, whiskey, and butter, that may be dangerous in their intended form, but notes that liability will not be imposed absent an additional ingredient which the ordinary consumer would not expect to be present. *See id.* at 352-53.

When the plaintiff cannot allege that something is "wrong" with the product, strict liability should not be used as a tool of social engineering to mandate that manufacturers bear the entire risk and costs of injuries caused by their products. *See Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 806, 395 A.2d 843, 845 (1978). Accordingly, because the plaintiff has failed to allege separately that cigarettes are "defective" and "unreasonably dangerous," he has failed to state a claim upon which relief may be granted. *Cf. Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 559-60, 503 A.2d 823, 825-26 (1986). Therefore, we need not decide whether bystanders may recover under section 402A.

## II. Restatement (Second) of Torts § 389

Count II of the plaintiff's writ was based on the RESTATEMENT (SECOND) OF TORTS § 389. The trial court dismissed this count on the grounds that New Hampshire law does not recognize a claim based on section 389, which provides:

Chattel Unlikely to be Made Safe for Use

One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

RESTATEMENT (SECOND) OF TORTS § 389.

The scope of liability under section 389 has been summarized as follows:

Under section 389 a supplier of a chattel who has informed the persons to whom he supplied the chattel of its dangerous condition may be held liable to persons ignorant of the dangerous condition of the chattel if he knows or has reason to know that the chattel is unlikely to be made reasonably safe before being put to its expected use. If the supplier of a chattel knows or has information from which a person of reasonable intelligence would infer that it is unlikely that the chattel will be made reasonably safe, the fact that he has informed the person through whom the chattel is supplied does not absolve him from liability. However, a supplier has no duty under section 389 to determine whether the chattel will be made reasonably safe — liability arises only when the supplier knows or has information from which he should know that there is a substantial probability that the chattel will not be made safe before it is used. Among the circumstances which render it unlikely that it will be made safe are knowledge of the fact that the chattel will be used so soon after it is turned over that it is substantially certain that no change will be made or that the

person through whom it is supplied is financially incapable of making it safe, or is notoriously careless. There are also some chattels which are so unsafe for the use for which they are likely to be put that the supplier cannot reasonably assume that the warning will be effective. Section 389 imposes liability upon the supplier in those situations.

*Lockett v. General Electric Company*, 376 F. Supp. 1201, 1209 (E.D. Pa. 1974) (citations omitted), *aff'd*, 511 F.2d 1394 (3d Cir. 1975) *and sub nom. General Electric Company v. Sun Shipbuilding & Drydock Company*, 511 F.2d 1393 (3d Cir. 1975).

▮ As the plaintiff correctly argues, section 389 is not a form of strict liability because it requires the defendant's knowledge of the product's dangerous condition and does not require that the product be defective. The trial court, acknowledging that the plaintiff had alleged facts sufficient to sustain a claim under section 389, dismissed Count II on the basis that "New Hampshire does not recognize a strict liability cause of action under section 389 of the Restatement." While this is no doubt correct, it fails to recognize the true character of section 389. Section 389 is a negligence provision governing the liability of suppliers under chapter 14, topic 1 of the RESTATEMENT. As a negligence provision, it carries with it all of the proof problems of negligence and restates, in the context of supplier liability, how these negligence concepts are to be applied. Section 389 is separate and distinct from the strict liability concepts in topic 5 of the same chapter.

▮ Section 389 is simply a statement of basic negligence principles of foreseeability and fault in the supplier context. *See Rodriguez v. Besser Co.*, 565 P.2d 1315, 1320 (Ariz. Ct. App. 1977) (there must be a reasonably foreseeable risk for section 389 to apply; thus, if no risk of the harm alleged is reasonably foreseeable from the product's use, a negligence action cannot be based on that use), *abrogated on other grounds by* Ariz. Rev. Stat. Ann. § 12-683 (1992). Indeed, under section 389, liability is imposed only when it is shown that the supplier knew, or should have known, that the chattel supplied is unsafe for its expected use, *see Maguire v. Pabst Brewing Co.*, 387 N.W.2d 565, 572 (Iowa 1986) (under the negligence principles in section 389, the relevant inquiry is whether unreasonable hazard to the plaintiff is to be foreseen from the use of the article), and then a duty is owed only to those who are foreseeably endangered and either ignorant of the chattel's dangerous propensities, or otherwise not chargeable with a positive balance of fault.

*See Kirkman v. Kirkman,* 552 N.E.2d 282, 285 (Ill. App. Ct.) (because plaintiff was not ignorant of dangerous condition, defendant was not liable under section 389), *rev. denied sub nom. Bushnell Tank Co. v. Kirkman,* 555 N.E.2d 375 (Ill. 1990).

■ We accept the plaintiff's invitation and adopt section 389 as a proper statement of the law of supplier negligence. More than sixty years ago, we adopted section 388 of the first RESTATEMENT OF TORTS, which is substantially similar to its successor in the RESTATEMENT (SECOND) OF TORTS. *See Lenz v. Company,* 88 N.H. 212, 214, 186 A. 329, 330-31 (1936). Section 388 concerns liability for supplying a chattel known to be dangerous to use and is closely analogous to section 389. *See Lockett,* 376 F. Supp. at 1207, 1209-10 (under both sections 388 and 389, a supplier is merely required to exercise reasonable care, and even then, only when it knows or should have known of the danger). Having adopted section 388, it is appropriate that we endorse section 389 as embodying "a conservative statement of the prevailing law in this country." *Lenz,* 88 N.H. at 214, 186 A. at 331.

■ The comments to section 389 make it clear that a bystander, assuming he is within the scope of foreseeability of risk, is owed a duty under law and may recover on a showing of breach, damage, and causation. Comment *e* explains the rule as follows:

> While the rule stated in this Section may, as stated in Comment *d,* occasionally apply to make the supplier of the chattel liable to those who use it with knowledge of its actual character, it is usually applicable to those who share in its use or are in the vicinity of it. Such persons, when injured, are not barred from recovery by the negligence of those who put a chattel to a use for which they know it is dangerous. In the great majority of cases, they are ignorant of the dangerous character of the chattel. Even if they are aware of the dangerous character of the chattel, they may be entitled to be in the danger zone and, therefore, are not contributorily negligent in entering or failing to leave the area endangered, unless the danger is very great.

RESTATEMENT (SECOND) OF TORTS § 389 comment *e* at 313.

A review of the pleadings in this case discloses sufficient allegations to support a cause of action in negligence based on the principles stated in section 389 of the RESTATEMENT (SECOND) OF TORTS. Accordingly, we reverse the trial court's ruling on count II.

This case should proceed to discovery as a negligence case. Through this process, the parties may learn the extent of the suppliers' knowledge of the hazards of the products they supplied, the suppliers' expectations as to the use of the product and those that might reasonably be affected, the extent of the plaintiff's knowledge of the hazards involved in the product's use, any actual causation of the damage alleged, and any conduct of the plaintiff material to comparative negligence.

*Affirmed in part; reversed in part; remanded.*

All concurred.