Rockingham
No. 97-877

## ROSS T. HOBIN

v.

## COLDWELL BANKER RESIDENTIAL AFFILIATES, INC.

January 31, 2000

*S. David Siff*, of Concord, on the brief, and *Ferriter, Scobbo, Caruso & Rodophele, P.C.*, of Boston, Massachusetts (*Gerald J. Caruso* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch*, of Manchester (*Steven E. Grill* on the brief), and *Wiggin & Dana*, of New Haven, Connecticut (*Edward W. Dunham* and *Patrick J. Corcoran* on the brief, and *Mr. Dunham* orally), for the defendant.

HORTON, J. The plaintiff, Ross T. Hobin, the owner of a Coldwell Banker franchise, appeals from an order of the Superior Court (*Gray*, J.) dismissing his claims against the defendant, Coldwell Banker Residential Affiliates, Inc. (Coldwell Banker), relating to Coldwell Banker's alleged placement of additional franchises in Hobin's territory. The trial court dismissed the claims of breach of the implied covenant of good faith and fair dealing, breach of contract, misrepresentation, and violation of New Hampshire's Consumer Protection Act, RSA ch. 358-A (1995 & Supp. 1998), for failure to state a claim. We affirm.

Upon review of the rulings on this motion to dismiss, we assume the following facts alleged by Hobin to be true for purposes of this appeal. *See Buckingham v. R. J. Reynolds Tobacco Co.*, 142 N.H. 822, 825, 713 A.2d 381, 383 (1998). In 1994, Hobin, who operated a real estate office in Rye, contacted Coldwell Banker about becoming one of its franchisees. At the time, the nearest Coldwell Banker office was Marple Associates (Marple), located 5.5 miles away in Portsmouth. Marple maintained a Rye telephone number, but no office in Rye.

Although the real estate market was depressed and Coldwell Banker was having difficulty selling new franchises in the area, Hobin thought he could make a franchise successful if Marple did not expand into Rye. Hobin raised the issue of Marple's potential expansion in his discussions with a Coldwell Banker recruiter, who told him that Coldwell Banker treated Rye as a "small market" area for which it charged a reduced franchise fee, implying that it could not support a second franchise and that the probability of a second franchise in Rye would be unthinkable. Throughout discussions of other Coldwell Banker franchisees, including its largest, Hunneman Real Estate Corporation (Hunneman), the recruiter did not mention the possibility of any franchisee opening an office in Rye. The recruiter did, however, suggest that Coldwell Banker's internal policies and procedures for awarding franchises would not permit the placement of a second franchise in such proximity to an existing franchise as to jeopardize that franchisee's business. As a result of these representations, Hobin executed a franchise agreement effective July 25, 1994, and entered Coldwell Banker's Small Market Program.

Throughout the next two years, Hobin competed with the Joycelyn Caulfield Agency (Caulfield), which maintained two locations — the first in Rye, within 300 feet of Hobin's office, and the second in North Hampton, 3.2 miles away. Sometime around January 1997, Hunneman, which had purchased Marple in late 1995, also

purchased Caulfield, resulting in its ownership of three offices within 5.5 miles of Hobin.

As represented to Hobin by the recruiter, Coldwell Banker maintains procedures for approving the placement of one franchise near or in another franchisee's territory. During Hobin's discussions with Coldwell Banker executives regarding his dissatisfaction with the additional Coldwell Banker offices in his territory, he discovered that those procedures include review of the proposed placement by a committee of ten to fifteen individuals and an opportunity for the existing franchisee to comment upon the placement. He also learned that, as Coldwell Banker's largest franchisee, Hunneman is given special preference and does not have to follow normal franchise-placement procedures. Coldwell Banker did not follow its procedures in permitting Hunneman to locate in Rye and North Hampton, but rather granted approval on a single telephone call from Hunneman's owner to Coldwell Banker's Franchise Development department.

Hobin brought a petition for injunctive relief against Coldwell Banker, Hunneman, and Caulfield. He later nonsuited his claims against Hunneman and Caulfield. He appeals the dismissal of his claims against Coldwell Banker for breach of implied covenant of good faith and fair dealing, breach of contract, misrepresentation, and violation of RSA chapter 358-A.

The standard of review in considering a motion to dismiss is "whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." *Miami Subs Corp. v. Murray Family Trust and Kenneth Dash Partnership*, 142 N.H. 501, 516, 703 A.2d 1366, 1375 (1997) (quotation omitted). "[W]e assume the truth of the facts alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to him." *Buckingham*, 142 N.H. at 825, 713 A.2d at 383 (quotation omitted). "If the facts pled do not constitute a basis for legal relief, we will uphold the granting of the motion to dismiss." *Id.*

As a preliminary matter, we note that in the franchise agreement, which was appended to the petition, the parties chose the law of California, the State of Coldwell Banker's incorporation, to govern the agreement and their "legal relationships." "Where parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction." *Kentucky Fried Chicken Corp. v. Collectramatic, Inc.*, 130 N.H. 680, 684, 547 A.2d 245, 247 (1988) (brackets and quotation omitted). California bears a significant relationship to the controversy based on Coldwell Bank-

er's incorporation therein. *See Ferrofluidics v. Advanced Vacuum Components*, 968 F.2d 1463, 1467-68 (1st Cir. 1992) (applying New Hampshire law). Accordingly, California law applies. *See id.* Hobin, relying on the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (1971), argues that if we conclude that the application of California law favors Coldwell Banker, we should ignore the parties' choice of law as a matter of public policy. He fails, however, to articulate a fundamental policy of our State that would be so offended by the application of California law as to justify overruling the parties' choice of law. We will therefore honor the parties' selection of California law.

Hobin's first issue is whether the trial court erred in dismissing his claim of breach of the implied covenant of good faith and fair dealing. The court dismissed the claim because the action of which Hobin complains, the grant of another franchise in Hobin's marketing area, is expressly permitted in the franchise agreement.

Hobin argues that although the agreement expressly reserved Coldwell Banker's right to place additional franchisees in Hobin's territory, Coldwell Banker had the duty to exercise its discretion in accordance with the covenant of good faith and fair dealing implied in all contracts. According to Hobin, allowing Coldwell Banker's largest franchisee to open two locations in his small-market territory, one within 300 feet of his office, was a breach of that duty.

Coldwell Banker counters that, under California law, the express terms of a contract always limit any implied covenants, and a party may not pursue a cause of action for breach of an implied covenant where the supposed covenant contradicts the express term.

The franchise agreement provided, in pertinent part:

> 1.02 *Grant of Franchise*
> (a) Franchisor hereby grants to Franchisee, and Franchisee hereby accepts, a non-exclusive franchise . . . . [N]othing contained herein shall be deemed to grant Franchisee an exclusive territory and Franchisor . . . may . . . franchise or license others to locate and operate additional residential real estate brokerage businesses within the market area within which Franchisee conducts and operates the Franchised Business.

Although the parties agree that the agreement expressly provided that Coldwell Banker may place additional franchises in Hobin's market area, they disagree as to whether the implied covenant of good faith and fair dealing implied in every contract, *see Carma*

*Developers v. Marathon Dev. Cal.*, 826 P.2d 710, 726 (Cal. 1992), operated to limit the extent of its discretion to do so.

In determining that a tenant had not breached the implied covenant of good faith and fair dealing against its landlord when the actions complained of were expressly allowed in the lease, the *Carma* court discussed two apparently inconsistent principles: that the covenant of good faith and fair dealing should be implied to limit the exercise of a discretionary power, and that express terms of a contract cannot be varied by an implied covenant. *Id.* at 726-28.

On one hand, as argued by Hobin, "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Id.* at 726.

On the other hand, supporting Coldwell Banker's contentions, the court stated that it was

> aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms. The general rule regarding the covenant of good faith is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing . . . . As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.

*Id.* at 728 (quotation, citations, and brackets omitted).

A subsequent California Court of Appeal opinion reconciled these seemingly inconsistent principles. *Third Story Music, Inc. v. Waits*, 48 Cal. Rptr. 2d 747 (Ct. App. 1995) (holding that the plaintiff music company had not stated a claim for breach of implied covenant of good faith and fair dealing when its contract with the defendant, to which it had sold certain music rights, expressly allowed the defendant to refrain from marketing the music). *The Third Story Music* court distinguished between the proper implication of a covenant of good faith and fair dealing "to contradict an express contractual grant of discretion when necessary to protect an agreement which otherwise would be rendered illusory and unen-

forceable," and situations in which a court may not imply such a covenant because "regardless of how such [discretionary] power [is] exercised, the agreement [is] supported by adequate consideration." *Id.* at 752-53.

█ The case before us is of the latter type. In consideration of Hobin's agreement to purchase and operate a Coldwell Banker franchise, his business accrued numerous benefits stemming from its association with a nationally recognized real estate marketing organization, including those resulting from chain identification, participation in a uniform system to promote and assist the business, training, and centralized programs for its use. Specifically, it received rights to the Coldwell Banker trademarks and trade names and the goodwill associated therewith, benefits accruing from Coldwell Banker's national and regional advertising, public relations and promotional campaigns, orientation and on-going training, operating advice and assistance, operational techniques and service concepts, on-site visits by Coldwell Banker field representatives, business-planning tools, sales and informational material, and available staff-recruitment, training, and advertising materials. Hobin was also eligible for cash awards based on his franchise's performance. Regardless of the extent of Coldwell Banker's exercise of its discretion — whether it chose to place competing franchises next door to Hobin or to leave the territory free of competitors — Hobin retained the right to the contractual benefits set forth above. Importantly, Coldwell Banker also incurred costs in providing its programs and assistance to Hobin. Even were we to adjudge the benefits accruing to Hobin to be worthless, the detriment Coldwell Banker incurred in providing its programs and assistance to Hobin was "sufficient to constitute consideration." *PMC, Inc. v. Porthole Yachts, Ltd.*, 76 Cal. Rptr. 2d 832, 837 (Ct. App. 1998). In sum, the consideration provided was "more than the peppercorn of consideration the law requires" to save the contract from unenforceability. *Third Story Music*, 48 Cal. Rptr. 2d at 753 n.5.

> The courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably. It is not enough to say that without the proposed implied covenant, the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements. The law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity.

*Walnut Creek Pipe Distrib. v. Gates Rubber Co. Sales Div.*, 39 Cal. Rptr. 767, 771 (Ct. App. 1964).

■ The next issue presented is whether Hobin has stated a claim for breach of contract. Hobin concedes that Coldwell Banker did not breach an express term of the agreement. Given our holding that Hobin has not alleged a breach of the implied covenant of good faith and fair dealing, we conclude that Hobin has not alleged a breach of an implied term of the agreement. Therefore, we hold that he has failed to state a claim for breach of contract.

We next address Hobin's contention that the trial court erred in dismissing the misrepresentation claim. Hobin first argues that Coldwell Banker led him to believe that his territory could support only one franchise. He alleged that Coldwell Banker's recruiter "implied that the area could not support a second franchise," "clearly implied that the probability of a second franchise in Rye would be unthinkable," and "suggested that the company's internal procedures and policies for awarding franchises would not permit a placement of a second franchisee in such proximity to an existing franchisee's location so as to jeopardize that franchisee's business." Even were we to conclude that such vague assertions could be construed as promises that Coldwell Banker would not permit the placement of additional franchises in Hobin's territory, the promises would be inadmissible under California's parol evidence rule.

■ Although denominated an evidentiary rule, the parol evidence rule is actually one of substantive law. *See Steinfield v. Monadnock Mills*, 81 N.H. 152, 153, 123 A. 224, 225 (1923). Having held that the substantive law of California governs the parties' agreement, we apply its rules as to the treatment of parol evidence. *Cf. Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 13, 549 A.2d 1187, 1191 (1988). California's parol evidence rule provides, in pertinent part:

(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

. . . .

(g) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, . . . or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud.

Cal. Civ. Proc. Code § 1856 (Deering 1981).

Hobin concedes that the parties' agreement is fully integrated, but contends that the fraud exception to the parol evidence rule permits the introduction of evidence of fraud. The exception does not apply, however, where "parol evidence is offered to show a fraudulent promise directly at variance with the terms of the written agreement." *Banco Do Brasil, S.A. v. Latian, Inc.*, 285 Cal. Rptr. 870, 892 (Ct. App. 1991) (quotation omitted). Such is the case here where the purported promise, that Coldwell Banker would not permit additional franchises in Hobin's territory, is directly at variance with the written agreement's provision reserving Coldwell Banker's right to place additional franchises therein.

Hobin argues that the parties had a separate agreement as to the specific approval process for the placement of franchises in close proximity to existing franchises. According to Hobin, the parties had reached an understanding, separate from the franchise agreement and prior to Hobin's execution thereof, that "whenever a Coldwell Banker franchisee was to be located within a 5-mile or so radius of an existing franchisee, an internal Committee at Coldwell Banker is convened to review and to approve the placement of the encroaching franchise" and that "[b]efore the decision on placement is made, . . . the existing franchisee is given the opportunity to comment upon the encroachment." Allegedly relying on this understanding, Hobin entered into the franchise agreement. According to the petition, Hobin discovered after Hunneman had established three nearby locations that Hunneman was not required to follow the standard procedures for franchise placement.

Critical to Hobin's argument is his assertion that he was apprised of the details of Coldwell Banker's franchise-placement approval procedures prior to signing the franchise agreement. Such can plainly not be elicited from the petition.

The chronology of events laid out in the petition includes a pre-contract discussion with a Coldwell Banker recruiter who

> suggested that the company's internal procedures and policies for awarding franchises would not permit a placement of a second franchisee in such proximity to an existing franchisee's location so as to jeopardize that franchisee's business.
>
> . . . Based upon these representations about the likelihood of placing a second franchise in Rye and other representations, Hobin entered Coldwell Banker's Small

Market Program, paid his franchise fee, and executed a Franchise Agreement.

Pages later, the petition states that after Hobin discovered that Hunneman had purchased Caulfield, and therefore had three nearby locations, Hobin had numerous discussions and exchanges of correspondence with Coldwell Banker executives regarding his dissatisfaction with the situation. At least three of the executives

> told Hobin that the situation was handled poorly and that in this case Coldwell Banker had failed to follow its customary procedures in approving the placement of one franchise near or in an existing franchisee's territory.
>
> . . . Hobin was told that whenever a Coldwell Banker franchisee was to be located within a 5-mile or so radius of an existing franchisee, an internal Committee at Coldwell Banker is convened to review and to approve the placement of the encroaching franchise. The Committee apparently consists of 10 to 15 individuals, including an attorney, who decide upon the placement of the new franchise. Before the decision on placement is made, however, the existing franchisee is given the opportunity to comment upon the encroachment.

■ Based on the chronology set forth in the petition, we find no merit in Hobin's argument that Coldwell Banker represented any details of its franchise-approval process prior to the execution of the agreement. We agree with the trial court's determination that Hobin failed to state a claim for misrepresentation.

Hobin's final issue is whether the trial court properly dismissed his claim of violation of New Hampshire's Consumer Protection Act. Although some courts have concluded that the parties' contractual choice of a foreign law to govern their agreement militates against an application of the forum's statutory protections, *see, e.g., Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1412-14 (N.D. Ill. 1996), we do not address the issue here because both parties argue the merits under the New Hampshire statute. *Cf. Mundaca Inv. Corp. v. Febba*, 143 N.H. 499, 501-02, 727 A.2d 990, 991 (1999).

■ Hobin contends that his allegations of breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation also make out a claim under the terms of RSA 358-A:2 (1995) (amended 1996, 1997), which make it "unlawful for any person to use . . . any unfair or deceptive act or practice in the

conduct of any trade or commerce within this state." The parties agree that in order for conduct to run afoul of the statute, it "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Barrows v. Boles*, 141 N.H. 382, 390, 687 A.2d 979, 986 (1996) (quotation omitted). As we have held, Hobin has alleged no actions on the part of Coldwell Banker that could be construed as conflicting with the express or implied terms of the agreement. Moreover, Hobin's allegations of Coldwell Banker's "impl[ications]" and "suggest[ions]" that the territory was too small to support an additional franchise simply do not rise to the level of rascality — particularly in light of the express agreement granting Coldwell Banker the discretion to place additional franchises in Hobin's territory. The trial court properly dismissed Hobin's Consumer Protection Act claim.

*Affirmed.*

BROCK, C.J., sat but did not participate in the decision; the others concurred.