Merrimack
No. 89-014

AMOSKEAG BANK

v.

REGIS J. CHAGNON d/b/a MANCHESTER MORTGAGE CO.,
BRAD MORROW d/b/a MORROW MILLWORK AND
SUNDEEN LUMBER COMPANY, INC.

April 11, 1990

*Vincent J. Nardi*, of Manchester, and *Elizabeth Cazden*, of Manchester (*Mr. Nardi* and *Ms. Cazden* on the brief, and *Ms. Cazden* orally), for Regis J. Chagnon d/b/a Manchester Mortgage Co.

*McSwiney, Jones, Semple & Douglas P.C.*, of Concord (*Ronna F. Wise* and *George B. Waldron, Jr.*, on the brief, and *Ms. Wise* orally), for Brad Morrow d/b/a Morrow Millwork.

*Kfoury & Elliott P.A.*, of Manchester (*Charla Bizios Labbe* on the brief and orally), for Sundeen Lumber Company, Inc.

*Scott A. Ewing*, of Manchester, for Amoskeag Bank, filed no brief.

JOHNSON, J.   This case involves the conflicting claims of three junior creditors, Regis J. Chagnon d/b/a Manchester Mortgage Co. (Manchester Mortgage), Brad Morrow d/b/a Morrow Millwork (Morrow), and Sundeen Lumber Company, Inc. (Sundeen), to the surplus funds of a mortgage sale. Amoskeag Bank filed a bill of interpleader with the superior court to determine the distribution of the surplus funds among the junior creditors. Manchester Mortgage appeals the December 12, 1988 decision of the Superior Court (*Manias*, J.) to distribute the surplus funds first to Morrow and then the balance to Sundeen, reserving no money for Manchester Mortgage. We affirm.

The lower court found the following facts:

"Amoskeag Bank held the first mortgage on the subject property; this mortgage deed was given on May 14, 1986. On February 24, 1987, Manchester Mortgage recorded a mortgage deed to secure a note in the amount of $25,196.72 with the registry of deeds. Although the mortgage deed was properly executed and acknowledged, through inadvertance [sic], the document that was recorded did not contain the [acknowledgment] page but rather, the signature page of the promissory note. On March 11, 1987, Morrow filed a writ of attachment in the amount of $18,000 to secure a debt of $17,967.49. Morrow's attorney performed a title search and

was aware of [Manchester Mortgage's] mortgage deed as filed. On August 26, 1987, Sundeen Lumber filed an attachment on the property in the amount of $18,000 to secure a debt of $16,655.21 plus interest and costs. Sundeen did not perform a title search. Pursuant to foreclosure proceedings, Amoskeag Bank performed a title search and contacted creditors regarding the proceeds remaining after Amoskeag satisfied its mortgage. Manchester Mortgage then corrected the recorded instrument on September 28, 1987."

The documents Manchester Mortgage actually recorded were: (1) the first page of a mortgage from Thomas Robinson Associates, Inc. (T.R.A.) to Manchester Mortgage, with a description of property on Knox Road in Bow; (2) the same page, re-typed; (3) the signature page of a promissory note, the maker being T.R.A.; and (4) the record of a corporate vote of T.R.A. authorizing the President "to borrow such sums as he sees fit to complete the construction project located on Knox Rd., Bow. . . ." The mortgage's signature and acknowledgment page was not recorded. T.R.A. asserted no claim to these funds and is not a party to this proceeding.

The superior court ruled that neither Morrow nor Sundeen had actual or constructive notice of Manchester Mortgage's mortgage because it was so defectively recorded. Morrow adopts this reasoning on appeal. Manchester Mortgage, on the other hand, argues that: (1) Morrow had actual notice of the defectively recorded deed because it performed a title search and was obliged to inquire as to the validity of the deed; (2) Sundeen had constructive notice of the defectively recorded deed, and thus must be charged with notice of what it would have learned had it performed a title search; and (3) under the operation of constructive notice, Sundeen must be placed in Morrow's position and therefore was also obliged to inquire as to the validity of the deed. Sundeen agrees with Manchester Mortgage that what was disclosed by Morrow's title search obligated Morrow to inquire further, and thus put Morrow on notice of the existence of the mortgage. But since Sundeen did not perform a title search, Sundeen argues that the defective recording of the deed protects it from constructive or actual notice of the mortgage.

Although Morrow performed a title search and saw the defectively recorded mortgage, we hold that Morrow was not obligated to inquire further, since it was an attaching creditor, not a prospective bona fide purchaser.

The statutes applicable to this case are RSA 477:3-a and 477:7. RSA 477:3-a reads:

"Every deed or other conveyance of real estate and every court order or other instrument which affects title to any interest in real estate, except probate records and tax liens which are by law exempt from recording, shall be recorded at length in the registry of deeds for the county or counties in which the real estate lies and such deed, conveyance, court order or instrument shall not be effective as against bona fide purchasers for value until so recorded."

RSA 477:7 reads:

"No deed of bargain and sale, mortgage nor other conveyance of real estate, nor any lease for more than 7 years from the making thereof, shall be valid to hold the same against any person but the grantor and his heirs only, unless such deed or lease be attested, acknowledged and recorded, according to the provisions of this chapter."

New Hampshire is a "race-notice" jurisdiction. That is, a purchaser or creditor has the senior claim if he or she records without notice of a prior unrecorded interest. The purpose then of the recording statutes recited above is to provide notice to the public of a conveyance of or encumbrance on real estate. The statutes serve to protect both those who already have interests in land and those who would like to acquire such interests.

Two principles of "race-notice" legislation are important for this case. First, all purchasers or creditors are held to be constructively notified of any properly recorded interest, whether or not the purchaser or creditor actually performs a title search. *See Lovell v. Osgood,* 60 N.H. 71, 72 (1880) (concerning a statute for recording mortgages of personalty). Second, even if no recording of a prior interest is made, a subsequent purchaser or creditor cannot have senior claim to the real estate if he or she has actual notice of the prior interest at the time the subsequent claim is recorded. *See Moore v. Kidder,* 55 N.H. 488, 493 (1875).

Applying these principles first to Morrow's claim, we find that Morrow had neither constructive nor actual notice of Manchester Mortgage's prior mortgage. No constructive notice was possible, since the mortgage was not properly recorded. *See Lovell supra* (when a statute expressly requires something to be placed on the

record, the absence of the item renders any recording defective). The unique question in this case is whether a party's discovery of a defectively recorded mortgage obligates him or her to investigate further in order to determine whether a mortgage was actually executed and acknowledged. If the party is obligated to investigate, then the party is chargeable with actual notice of what the investigation will show; *i.e.*, the existence of the mortgage. A review of the relevant case law reveals a distinction between the treatment of attaching creditors, on the one hand, and of persons wishing to become bona fide purchasers (BFP), on the other. This court has held that a prospective BFP has a duty to investigate once such a BFP has acquired knowledge of another party's possible interest in the real estate, such as in the case where, as here, an improperly recorded mortgage is found through a title search, thus putting the BFP on notice of a possible claim of a security holder. *See Sawin v. Carr,* 114 N.H. 462, 323 A.2d 924 (1974) (BFP's duty to investigate arose from the fact that the third party claiming interest occupied the premises); *Kidder v. Flanders,* 73 N.H. 345, 61 A. 675 (1905) (BFP's obligation to investigate arose from the fact that the seller of property orally informed the buyer of the existence of a contract for the sale of timber then standing on the property). An attaching creditor may simply rely on the record. *See General Motors &c. Corp'n v. Company,* 84 N.H. 348, 350, 150 A. 739, 741 (1930) (in dictum, court overruled prior decision involving real estate containing language indicating that errors or omissions of a register of deeds would not prejudice a grantee of real estate who had properly presented his instrument of conveyance for recording); *Hill v. Gilman,* 39 N.H. 88 (1839) (an improperly recorded mortgage was invalid against an attaching creditor, who had attached the property, notwithstanding he had knowledge of the mortgage as it appeared upon the record). Thus an attaching creditor can have actual notice of a prior interest only if he or she discovers a *properly* recorded interest during a title search or independently learns of the existence of the interest. *General Motors* and *Hill* involved mortgages of personalty rather than realty; however, we find that there is no reason for a different rule whether the property is real or personal. The holder of a mortgage has the obligation to see that the instrument is properly executed and recorded.

Prospective BFP's and attaching creditors are treated differently in this context because of their differing commercial goals. A prospective BFP wants to obtain good title to property and thus may

forego a purchase if a prior mortgage on the property is discovered and arrangements cannot be made by the seller to pay off the mortgage. Even an improperly recorded mortgage, such as the one in this case, is evidence that someone intended to record a mortgage. Because a potential BFP has a desire to obtain the property free and clear of all encumbrances, such evidence is enough to obligate him or her to investigate beyond the record to determine whether a properly executed and acknowledged mortgage actually exists.

An attaching creditor, on the other hand, generally performs a title search in order to plan ahead financially. Unlike the prospective BFP, who wishes to make sure he or she will obtain an interest in a property free and clear of encumbrances, the attaching creditor simply wants to know *how many* creditors, if any, have already recorded an interest in the property. Rarely, if ever, will an attaching creditor forego recording simply because another creditor has recorded first. An attaching creditor in this position would likely record the attachment and then look for additional ways to secure the underlying debt. Further, the attaching creditor who has done a title search will be in a position to evaluate its chances of recovering all, a portion, or none of the debt and make business decisions accordingly.

■ Because of the profound differences between the goals of a BFP and an attaching creditor, we hold that an attaching creditor need not investigate outside of the record to determine whether a mortgage has, in fact, been properly executed and acknowledged. Thus, Morrow's attachment was effective.

■ Turning to Sundeen's claim, we again find no notice, constructive or actual, of Manchester Mortgage's prior mortgage. Since the mortgage was improperly recorded, no constructive notice is possible. Like Morrow, Sundeen was an attaching creditor. Thus Sundeen would have had no duty to investigate and would not have been put on actual notice, even if it had performed a title search and found Manchester Mortgage's defectively recorded mortgage. Since Sundeen did not learn of the mortgage by any other means before recording its attachment, it had no actual notice of the mortgage.

■ Morrow recorded before Sundeen. Thus, the trial court correctly decided the order of priorities as follows: Morrow, Sundeen, and Manchester Mortgage.

*Affirmed.*

SOUTER and THAYER, JJ., concurred in the result; the others concurred.