In re Charles J. MOSELLO and Patricia Mosello, Debtors.

Charles J. MOSELLO and Patricia Mosello, Plaintiffs–Appellants,

v.

ALI, INC., Anthony Keogh and Amerifirst Mortgage Corp., Defendants–Appellees.

No. 95 CV 7644.

United States District Court, S.D. New York.

March 6, 1996.

148

Leonard Lombardi, Pleasantville, NY, for Plaintiffs–Appellants.

Windels Marx Davis & Ives, New York City, for Defendant–Appellee Ali, Inc.

Jeffrey Sunshine, Lake Success, NY, for Defendants–Appellees.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### FACTS

Debtors Charles J. Mosello and Patricia Mosello ("the Mosellos") appeal from a decision of the bankruptcy court, dated June 14, 1995 granting the motion of defendants-appellees Ali, Inc., Anthony Keogh and Amerifirst Mortgage Corp. ("the Bank") to dismiss the adversary proceeding for failure to state a claim, and from the order, dated July 31, 1995 dismissing the adversary proceeding.

The facts are undisputed. The Mosellos own real property consisting of approximately 12 acres in the hamlet of Thornwood, Town of Mount Pleasant ("the property"). In 1989, the Mosellos borrowed $1,000,000 from the Bank.[1] They executed a promissory note in the amount of $1,000,000 collaterally secured by two mortgages, one of which covered the property ("the mortgage"). The mortgage was duly recorded in July 1989 in the Office of the Westchester County Clerk. In February 1991, the Bank initiated foreclosure proceedings and filed a Notice of Pendency in March 1991.

In May 1992, the Bank obtained a judgment of foreclosure against the Mosellos in the amount of $1,239,736.56. The judgement of foreclosure was duly recorded in the Office of the Westchester County Clerk on May 8, 1992. In June 1992, the Bank entered into a forbearance agreement ("the agreement") with the Mosellos, in which it agreed to delay enforcement of the judgment of foreclosure and to reduce the amount owed to $1,181,-326.89, on the condition that the Mosellos abide by the terms of the repayment schedule contained in the agreement.

In April 1993, the Mosellos sold two lots from the property covered by the mortgage. To permit consummation of the sale, the Bank agreed to release its lien on the two lots. The Bank executed a "Release of Part

---

1. The Mosellos borrowed the money from Village Savings Bank. In May 1993, however, First Fidelity Bank, N.A. succeeded to Village Savings Bank's interest in the Mosellos' note, the mortgage and the judgment of foreclosure. In December 1993, Ali, Inc. purchased the interest of First Fidelity Bank, N.A. in the note, mortgage and judgment of foreclosure.

of Mortgaged Premises," dated April 15, 1993 ("the release"), which released "all that part of said mortgaged lands described as follows: See Schedule 'A' attached hereto and made a part hereof" from the mortgage. Unbeknownst to any party, Schedule A attached to the release contained a metes and bounds description of the entire property, rather than just a description of the two lots. The Bank obtained an order of the Supreme Court, Westchester County, vacating the previously filed notice of pendency as to the two lots and amending the judgment of foreclosure by deleting the two lots from the description of the property. The order and release were filed in the Office of the Westchester County Clerk on April 29, 1993.

The Mosellos failed to comply with their obligations under the agreement, and in June 1993 a sheriff's sale of the property was scheduled for September 30, 1993. On September 27, 1993, the Mosellos filed their Chapter 11 petition. In December 1994, the Bank moved for relief from the automatic stay to proceed with sale of the property in accordance with the judgment of foreclosure. In February 1995, the bankruptcy court signed a stipulation and order lifting the stay. The following day, the bank learned of the erroneous Schedule A, as a result of a title search, and in March executed a "Corrected Release of Part of Mortgaged Premises," substituting a new Schedule A which correctly identified the two lots. The corrected release was filed with the Office of the Westchester County Clerk on July 23, 1993.

The Mosellos filed an adversary proceeding seeking a declaratory judgment that the Bank's mortgage lien on the property was wholly discharged and extinguished by the release, rendering the Bank an unsecured creditor, over whom the Mosellos, as debtors-in-possession with a judicial lien pursuant to

11 U.S.C. § 544(a), have priority. The Bank moved to dismiss the complaint on the ground that the release, even if valid under state law, did not release its statutory lien on the property arising from the judgment of foreclosure. The bankruptcy court granted the Bank's motion to dismiss on the grounds that the judgment of foreclosure was a money judgment for purposes of § 5203(a) of the New York Civil Practice Law and Rules, that the lien created by the judgment of foreclosure was neither void nor voidable as a result of the release, and that a hypothetical purchaser of the property for purposes of 11 U.S.C. § 544(a)(3) would have had constructive notice of the judgment of foreclosure.

The Mosellos appeal from the bankruptcy court's decision on the grounds that it erred in finding that the judgment of foreclosure was a money judgment for purposes of CPLR § 5203(a), that the release vacated the judgment of foreclosure, and that a hypothetical purchaser for purposes of 11 U.S.C. § 544(a)(3) would be entitled to rely on the release.

## DISCUSSION

█ Because on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a court must presume all factual allegations in the complaint to be true, see *Festa v. Local 3 Int'l Brotherhood of Elec. Workers,* 905 F.2d 35, 37 (2d Cir.1990), the bankruptcy court's decision is subject to *de novo* review. See *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990), *cert. denied, Air Line Pilots Ass'n, Intern., AFL–CIO v. Shugrue,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).

The bankruptcy court held that, pursuant to 11 U.S.C. § 1107(a), the Mosellos, as debtors in possession, are entitled to exercise the rights of a Chapter 11 trustee, including the rights of a trustee under 11 U.S.C. § 544(a).[2]

---

2. Under 11 U.S.C. § 544(a), a Chapter 11 trustee may avoid any transfer of property by the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchase of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona

Under § 544(a)(1) and (2), as of September 27, 1993, the date they filed their Chapter 11 petition, the Mosellos thus assumed the position of a hypothetical creditor with a judicial lien on the property. The bankruptcy court further held, however, that under CPLR § 5203 the Mosellos' § 544 judicial lien was not effective against the Bank's previously docketed judgment of foreclosure.

CPLR § 5203 provides, in pertinent part:

No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor ... from the time of the docketing of the judgment with the clerk of the county in which the property is located ...

CPLR § 5023(a). The bankruptcy court held that the Bank's judgment of foreclosure, on its face, was a "money judgment" as defined by CPLR § 105(q). Therefore, it held, under the express language of CPLR § 5203(a), the Mosellos' § 544 judicial lien obtained on September 27, 1993 was not effective against the Bank whose judgment lien was docketed on May 8, 1992.

Finally, the bankruptcy court held that based on the facts alleged, there could not have been a bona fide purchaser of the property without notice of the foreclosure judgment. Therefore, the Mosellos did not acquire the right under § 544(a)(3) to avoid the judgment of foreclosure.

Citing *Wyoming Co. Bank v. Kiley*, 75 A.D.2d 477, 430 N.Y.S.2d 900 (4th Dept. 1980), the Mosellos first argue that the bankruptcy court erred in holding that the judgment of foreclosure was a "money judgment" subject to CPLR § 5203. *Wyoming County Bank* held that an action to foreclose a mortgage is an equitable action and does not result in a "money judgment" within the purview of the homestead exception of CPLR § 5206(a).

■ Here, however, the judgment of foreclosure was for a sum of $1,212,456.29, plus allowances, interest, costs, fees, expenses and taxes, in addition to directing the sale of the

mortgaged premises. CPLR § 105(q) defines a "money judgment" as "a judgment, or any part thereof, for a sum of money or directing the payment of a sum of money." Therefore, because part of the judgment of foreclosure was for a sum of money, it is a "money judgment." CPLR § 105(q). See also CPLR § 5101; Seigel, Practice Commentaries, McKinney's Consolidated Laws of N.Y., Book 7B, 1978, CPLR § 5101.1.

Citing *Bernard v. Onderdonk*, 98 N.Y. 158 (1885), the Mosellos next argue that a judgment of foreclosure is inseparable from and dependant upon a mortgage lien such that the release of a mortgage vacates an accompanying foreclosure judgment. Therefore, they argue, in April 1993 when the mortgage was released, the Bank became an unsecured creditor, with a lien subordinate to the Mosellos' § 544 judicial lien. The Bank does not concede that the release was effective as a matter of state law, but argues that even if its mortgage lien were released, its judgment of foreclosure, which was docketed on May 8, 1992, was not vacated by the release and therefore retained priority over the Mosellos' § 544 judicial lien.

In *Bernard*, the court held that a twenty-year statute of limitations on an action to enforce a mortgage lien also applies to bar an action on a judgment of foreclosure: "Upon this principle it has been held that where there had been a foreclosure sale, not followed by a conveyance to the purchaser, or any recognition of the mortgage by the mortgage debtor, it will be presumed after the lapse of twenty years that the land had been redeemed from such sale." *Bernard*, 98 N.Y. at 166.

In reaching its decision, the court adopted alternative holdings. It first held that a judgment of foreclosure and sale is simply a means of enforcing a mortgage lien and does not impair a mortgagor's right to redeem so that, notwithstanding a decree of foreclosure, a mortgage lien, just as if it stood alone, is liable to be defeated by the presumption of payment founded upon a lapse of twenty

fide purchaser and has perfected such transfer at the time of the commencement of the case,

whether or not such a purchaser exists.
11 U.S.C. § 544(a).

years. See *Bernard,* 98 N.Y. at 166. The court continued, however, that even if a judgment of foreclosure were held to create a new security, the same presumption of payment would apply after twenty years. See *Bernard,* 98 N.Y. at 166.

■ The language relied upon by both parties is dicta to *Bernard*'s holding that the statute of limitations barred the action whether based on the mortgage lien or the judgment of foreclosure and sale. Moreover, *Bernard* is not our case. Here, the judgment of foreclosure is a "money judgment" because it is a judgment directing the payment of a sum of money. CPLR § 105(q). Even if the release of the mortgage were held to vacate "the res" of the judgment of foreclosure, as the Mosellos contend, that part of the judgment directing the payment of a sum of money would remain as an enforceable lien.

■ The Mosellos also argue that the bankruptcy court erred in "treating the judgment of foreclosure and sale as a judgment that can be docketed, as opposed to filed." A county clerk is required, however, to docket all "money judgments" upon filing and, if requested by the judgment creditor, may docket judgments in actions involving real property. CPLR § 5018. There is no dispute here that the judgment of foreclosure was duly recorded, i.e., docketed, on May 8, 1992.

■ Finally, with regard to § 544(a)(3), the Mosellos argue that they have acquired the rights and powers of a bona fide purchaser of real property to avoid an assignment of an interest in real property. The definition and powers of a "bona fide purchaser" are governed by the substantive state law pertaining to the subject property. See *In re Bygaph, Inc.,* 56 B.R. 596, 602 (S.D.N.Y. 1986). In New York, a bona fide purchaser must have purchased the property "in good faith without notice and for valuable consideration." *In re Hardway Restaurant, Inc.,* 31 B.R. 322 (Bankr.S.D.N.Y.1983). "Under New York law, such notice consists of actual notice and constructive notice of what may be revealed by (1) an examination of the record, (2) reasonable inquiry of those in actual pos-

session, or (3) reasonable inquiry on the basis of all circumstances." *In re Bygaph, Inc.,* 56 B.R. at 602 (citations omitted). Section 544(a) provides, however, that the trustee's or debtor-in-possession's actual knowledge is not a consideration, but the trustee or debtor-in-possession is subject to constructive notice. See, e.g., *In re Euro–Swiss International Corporation,* 33 B.R. 872, 881 (Bankr. S.D.N.Y.1983).

■ The Mosellos argue that on September 27, 1993 a hypothetical purchaser's search of the Office of the County Clerk would have revealed that the Mosellos were granted a mortgage that was recorded on July 30, 1989 and that the mortgage was released on April 15, 1993. They assert that although a search of the court file would reveal that the Bank obtained a judgment of foreclosure on March 4, 1991, and that the judgment of foreclosure and notice of pendency were amended to delete the two lots on July 23, 1993, a hypothetical purchaser would be entitled to rely on his knowledge that a release is a conveyance, and to assume that the court file inaccurately described the property that was released.

The bankruptcy court correctly concluded that this argument has no merit, i.e., that no hypothetical purchaser could have become bona fide in September 1993. Because of its internal inconsistency, the release by itself provided constructive notice of the Bank's lien. It was entitled "Release of Part of Mortgaged Premises" and the granting clause stated that it released "all that part of said mortgaged lands ...," but it described all the property covered by the mortgage. In addition, the judgment of foreclosure and the amending order correctly describing the two lots and thereby exposing the error in the description attached to the release also provided constructive notice of the Bank's lien. See *Astoria Federal Savings & Loan Ass'n v. June,* 190 A.D.2d 644, 645, 593 N.Y.S.2d 250, 252 (1st Dept.1993).

In conclusion, the decision of the bankruptcy court is affirmed.

SO ORDERED.