Rockingham
No. 97-843

ROBERT J. THOMAS

v.

GEORGE R. AND PRISCILLA A. FINGER

December 21, 1999

*Gerald F. Giles*, of Portsmouth, by brief and orally, for the plaintiff.

*Marc A. Pinard*, of Bedford, by brief and orally, for the defendants.

BRODERICK, J. The sole question presented by this appeal is whether the Trial Court (*McHugh*, J.) abused its discretion in denying plaintiff Robert J. Thomas' motions for directed verdict and to set aside the jury verdict in favor of the defendants, George R. and Priscilla A. Finger. The defendants were found to be bona fide purchasers for value (BFPs) of real estate, and thus not subject to the plaintiff's statutory lien for labor and materials. We affirm.

This case was previously before us. *See Thomas v. Finger*, 141 N.H. 134, 679 A.2d 567 (1996). The plaintiff appealed an order of the Superior Court (*Coffey*, J.) which denied him an evidentiary hearing to determine whether the defendants were BFPs of certain improved land in Bedford. Holding that the trial court abused its discretion by conducting a contested hearing on offers of proof over the plaintiff's objection, we remanded the case for a full evidentiary hearing. On remand, following a two-day trial, the defendants were found to be BFPs. The plaintiff now appeals the trial court's denial of his motions for directed verdict and to set aside the jury verdict.

Viewed in the light most favorable to the defendants, the following facts were adduced at trial. In early March 1994, the Fingers moved to New Hampshire from Vermont. On the recommendation of a local real estate broker, they hired builder Dennis McKenna to be the general contractor for the construction of their home on Hickory Lane in Bedford. McKenna agreed to sell them the lot and a substantially completed home for $131,118. As general contractor, McKenna hired all subcontractors to work on the project. At McKenna's request, the Fingers advanced $44,000 of the purchase price. McKenna executed a promissory note to the Fingers and gave them a second mortgage on the property. McKenna granted a first mortgage to a third party for $95,000.

Construction on the home began in May 1994. McKenna hired the plaintiff, a well driller, to install an artesian well on the property, which he completed in late June. Although Thomas submitted a bill for $4,480, McKenna never paid it and Thomas never sent it to the Fingers. The Fingers closed on the property on August 8, 1994. In early October 1994, Thomas secured and recorded an *ex parte* attachment against the property to perfect his statutory lien for labor and materials. *See* RSA 447:2 (1991). The Fingers, in turn, moved to vacate the attachment, arguing, in part, that they were BFPs and thus not subject to the lien because they took title to the Hickory Lane property without actual or constructive notice of the plaintiff's claim.

The Fingers have no prior experience in real estate development and have never engaged in the construction business or been involved with general contracting. They did not hire a lawyer to assist them in their transactions with McKenna and relied on their mortgage company to conduct a title search prior to closing for any encumbrances on the property. During the course of construction, the Fingers visited the site on several occasions to ensure that the subcontractors were working and that no problems existed. At no time during their several conversations with the subcontractors were they informed that McKenna was not paying bills in a timely fashion.

At the closing in August, the Fingers reviewed and signed numerous documents that the closing agent for the mortgage company briefly summarized for them. Among them was an Owner's Affidavit signed by McKenna declaring that (1) all work on their house was completed more than 120 days prior to the date of the closing, (2) all bills for labor and materials used in the construction were paid, and (3) no outstanding claims, bills, attachments, petitions for attachment, liens, or pending suits of any kind existed.

In fact, there were unpaid bills and encumbrances clouding title to the property. McKenna had defaulted on several promissory notes to DDM Realty Trust (DDM) involving unrelated activities, and his real estate was subject to a $110,000 attachment. DDM, however, provided a partial discharge of the attachment at the August closing to release the Hickory Lane property. McKenna also identified at the closing outstanding debts of approximately $34,000 to two subcontractors who furnished labor and materials for the Fingers' home. These debts were included in the HUD Settlement Statement used at the closing and were to be discharged from the closing proceeds. Finally, the $44,000 promissory note in favor of the defendants had not been paid by mid-July as promised and was in default. The Fingers, however, received full credit for this advance at the closing.

The plaintiff concedes that he had no proof that the Fingers had actual notice of his unpaid bill prior to closing, but argues that the record clearly established that the defendants had constructive notice of his lien for labor and materials. Specifically, he asserts that the Owner's Affidavit contained conspicuous falsehoods which should have alerted the Fingers that McKenna's representation that all debts had been paid was not trustworthy. Consequently, the plaintiff argues, the Fingers could not have been BFPs. "A bona fide purchaser for value is one who acquires title to property for value, in good faith, and without notice of competing claims or interests in the property." Finger, 141 N.H. at 137, 679 A.2d at 569. The defendants bear the burden of establishing their BFP status. See id. at 138, 679 A.2d at 569.

Before addressing the merits of the plaintiff's appeal, we first consider the appropriate standards of review.

> A trial court may grant a directed verdict only when the evidence and all reasonable assertions therefrom, construed most favorably to the party opposing the motion, would not enable a jury to find for that party . . . . [I]f the evidence is conflicting or several reasonable inferences may be drawn, the motion for a directed verdict should be denied . . . . Our standard of review on this issue is whether the trial court abused its discretion.

Laramie v. Sears, Roebuck & Co., 142 N.H. 653, 656, 707 A.2d 443, 444-45 (1998) (quotation and citation omitted). In ruling on a motion to set aside a jury verdict, the trial court must decide whether the verdict was reasonable in light of the evidence. See Johnston v.

*Lynch*, 133 N.H. 79, 85, 574 A.2d 934, 938 (1990). Again, we will not reverse the trial court's ruling absent an abuse of discretion. *See id.*

A statutory lien arises under RSA 447:2 (1991) when a person "perform[s] labor or furnish[es] materials to the amount of $15 or more for . . . building any dam, canal, sluiceway, well or bridge." Such lien continues for 120 days after the labor or service is provided. *See* RSA 447:9 (1991) (amended 1998). "Any such lien may be secured by attachment of the property upon which it exists at any time while the lien continues." RSA 447:10 (1991). Here, no attachment was recorded until two months after the Fingers acquired title to the property. The sole question, therefore, is whether a jury could have reasonably concluded that they acquired title, in good faith, without constructive notice of the plaintiff's claim.

While real estate purchasers are typically charged with constructive notice of liens that are properly recorded by the time of closing, *cf. Chagnon Lumber Co. v. Stone Mill Const. Corp.*, 124 N.H. 820, 823, 474 A.2d 588, 590 (1984), such notice may also arise from the totality of circumstances that would place a reasonable buyer on notice that further inquiry should be made to ensure that no cloud on the title exists. *See, e.g., In re Mosello*, 190 B.R. 165, 170 (Bankr. S.D.N.Y. 1995) (buyer is not BFP where mortgage release contains material inconsistencies), *aff'd*, 193 B.R. 147 (S.D.N.Y. 1996); *Waxler v. Waxler*, 699 A.2d 1161, 1164 (Me. 1997). In sum, a real estate purchaser will be charged with constructive knowledge of "what may be revealed by an examination of the record or reasonable inquiry on the basis of all the circumstances." *In re Mosello*, 190 B.R. at 170 (quotation omitted).

The plaintiff argues that the Fingers were on constructive notice of his unrecorded mechanic's lien because the facts and circumstances surrounding the closing, particularly McKenna's affidavit, should have put them on notice that McKenna was less than truthful in his disclosures and that further inquiry about possible unpaid bills was required. The plaintiff asserts that such inquiry would have revealed his outstanding bill. Specifically, he points to the assertions in McKenna's affidavit that the Fingers' home was completed more than 120 days prior to the closing and that there were no outstanding claims, bills, or attachments as providing a reasonably prudent purchaser, who possessed contrary information, with sufficient notice to require further inquiry. The plaintiff also argues that McKenna's perilous financial condition should have raised the suspicion of a reasonably prudent purchaser that McKenna might not have fully paid subcontractors and suppliers.

We examine the plaintiff's arguments keeping in mind that if a reasonable jury could have concluded that the Fingers did not fail to make a "reasonable inquiry on the basis of all the circumstances," *In re Mosello*, 190 B.R. at 170, the plaintiff's arguments will fail. Although the record supports the plaintiff's arguments that the Fingers knew or should have known that their home was completed less than 120 days before the closing, contrary to McKenna's affidavit, and therefore that a mechanic's lien could exist, the totality of circumstances surrounding the affidavit and closing could have reasonably dispelled any such concerns. McKenna specifically identified outstanding debt of approximately $34,000 to two subcontractors who were to be paid from the closing proceeds. Reading his affidavit and closing disclosure together, a reasonably prudent purchaser could conclude that McKenna was forthcoming and that his affidavit declaring no debt, claims, or attachments, as modified by his disclosure, was, indeed, accurate.

Underlying the plaintiff's argument is the assumption that the Fingers should have been alerted that McKenna was in financial difficulty because he was paying creditors from the closing proceeds. To the contrary, the Fingers could have been reasonably reassured that McKenna was financially responsible and meeting his obligations because he appeared to be paying his creditors.

The assurance in McKenna's affidavit that no attachments existed was not entirely accurate because DDM Realty had an attachment on record against several McKenna properties, including the Hickory Lane lot. Again, however, a reasonably prudent purchaser could conclude that because McKenna produced a valid partial release from DDM at the closing, McKenna's assertion was, in context, accurate. The mere fact that McKenna may have owed money to DDM on other projects does not mean that he had not discharged his debts to subcontractors who worked on the Fingers' home. Nor should it have necessarily put the Fingers on inquiry notice of such circumstances.

Finally, no reasonable inference of constructive notice was compelled by the fact that McKenna's promissory note to the Fingers, which was to be paid in mid-July, was in default by the time of the closing. Whenever the closing occurred, the Fingers assumed that the debt would be discharged through a credit on the total purchase price. In fact, the August closing statement reflected just such a credit.

■ Because a reasonable jury could have concluded that the defendants did not have constructive notice of the plaintiff's claims,

we hold that the trial court properly exercised its discretion in denying the plaintiff's motions for directed verdict and to set aside the verdict.

*Affirmed.*

All concurred.