Rockingham
No. 2011-042

C F INVESTMENTS, INC.

v.

OPTION ONE MORTGAGE CORPORATION *& a.*

Argued: February 15, 2012
Opinion Issued: March 9, 2012

*Bryan J. Kerman,* of Methuen, Massachusetts, on the brief and orally, for the plaintiff.

*Johnson & Borenstein, LLC,* of Andover, Massachusetts (*Mark B. Johnson* and *Donald F. Borenstein* on the brief, and *Mr. Johnson* orally), for the defendants.

LYNN, J. After a bench trial, the Superior Court (*McHugh,* J.) ruled in favor of defendants Option One Mortgage Corporation (Option One) and Wells Fargo Bank, N.A., concluding that the claim of its predecessor-in-interest, First Eastern Mortgage Corporation (First Eastern), to real property located in North Hampton (the Property) had priority over the claim of the plaintiff, C F Investments. We affirm.

I

The following undisputed facts are drawn from the record. On January 21, 1989, Richard Cormier conveyed the Property to CF Realty Trust by warranty deed, and CF Realty Trust recorded the conveyance in the registry of deeds shortly thereafter. In 1993, CF Realty Trust and C F Investments, a New Hampshire corporation whose principal place of business is in Andover, Massachusetts, both filed for Chapter 11 bankruptcy. Pursuant to a proposed plan of reorganization, C F Investments succeeded to all of CF Realty Trust's assets, including the Property, and

the bankruptcy court entered a final decree approving the proposed plan in 1995. However, C F Investments never recorded its interest in the Property in the registry of deeds.

Notwithstanding the bankruptcy plan, CF Realty Trust continued to conduct real estate business after 1995. On June 7, 2002, Robert Fuller, acting as trustee of CF Realty Trust, conveyed the Property to himself as an individual and duly recorded the transaction in the registry of deeds. He then borrowed $219,000, secured by a mortgage on the Property, from First Eastern, and First Eastern recorded its interest. Thereafter, First Eastern assigned its interest to the defendants, and the defendants duly recorded.

In January 2008, counsel for C F Investments notified defendant Option One of its competing claim to the Property, alleging that Robert Fuller had acquired title to it unlawfully and had no authority to borrow money against it. In June 2008, defendant Wells Fargo notified C F Investments of its intent to conduct a foreclosure sale of the property on July 7, 2008, because Fuller had defaulted on his promissory note. C F Investments brought this action in superior court to enjoin the foreclosure sale, arguing that CF Realty Trust did not own the property at the time of its purported conveyance, that such conveyance was therefore invalid, and that consequently Fuller could not lawfully have granted a mortgage to First Eastern. The trial court disagreed, concluding that First Eastern was protected as a bona fide purchaser without notice of C F Investments' claims. This appeal followed.

## II

C F Investments first argues that CF Realty Trust "had no lawful title or authority" to convey the property to Robert Fuller individually. As the trial court recognized, however, the issue in this case is not whether CF Realty Trust had "lawful title" to the property, but whether First Eastern was a bona fide purchaser without notice of C F Investments' prior competing claim to the property; if so, then its mortgage is senior to C F Investments' interest.

New Hampshire is a "race-notice" jurisdiction. *Amoskeag Bank v. Chagnon*, 133 N.H. 11, 14 (1990). Therefore, a person or entity with a claim to real estate, such as the plaintiff, must record its interest in order to prevail over a bona fide purchaser for value. *See id.* As the recording statute states:

> Every deed or other conveyance of real estate and every court order or other instrument which affects title to any interest in real estate, except probate records and tax liens which are by law

exempt from recording, shall be recorded at length in the registry of deeds for the county or counties in which the real estate lies and such deed, conveyance, court order or instrument shall not be effective as against bona fide purchasers for value until so recorded.

RSA 477:3-a (2001). The recording requirement "provide[s] notice to the public of a conveyance of or encumbrance on real estate" and "serve[s] to protect both those who already have interests in land and those who would like to acquire such interests." *Amoskeag Bank*, 133 N.H. at 14. Accordingly, in order for the defendants to claim the protection of the recording statute as bona fide purchasers, they must have lacked notice — actual, record, or inquiry — of the plaintiff's prior interest. *Cf. Mansur v. Muskopf*, 159 N.H. 216, 224 (2009).

■ The goal of a prospective bona fide purchaser is "to make sure he or she will obtain an interest in a property free and clear of encumbrances." *Amoskeag Bank*, 133 N.H. at 16. Because properly recorded instruments are deemed to give notice to prospective purchasers of any outstanding claims against property, a proper search of public records should reveal whether the grantor has clear and marketable title to the property with the right to convey it. *See generally* 14 R. POWELL, POWELL ON REAL PROPERTY § 82.01[4], at 82-14 (Michael Allan Wolf, ed., 2009). A proper search of a property's chain of title includes tracing the property back to a firm root in title and researching the grantor index from that date forward for out-conveyances to be sure that other deeds executed by a grantor did not convey or encumber the land desired by the prospective purchaser. *See generally id.* § 82.03[2][a], at 82-72 (describing mechanics of title search).

■ In addition, bona fide purchasers may not ignore information pertinent to title, even from sources outside the chain of title, "to the extent such information puts the person on reasonable inquiry notice of information that may bring into question the state of title." 77 AM. JUR. 2D *Vendor and Purchaser* § 385, at 434 (2006); *see, e.g., Bynum v. Barker*, 39 So. 3d 1013, 1017 (Ala. 2009) (inquiry notice is "knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party"); *Will Investments, Inc. v. Young*, 317 S.W.3d 157, 166 (Mo. App. 2010) (inquiry notice refers to "notice of facts that would place a reasonably prudent person upon inquiry as to the title he or she is about to purchase"); *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 559 (Tex. App. 2010) ("Notice is sufficient if it would lead an ordinarily prudent man to inquire into the matter."). Thus, subsequent purchasers and

mortgagees are obligated to fully investigate any apparent discrepancies to determine whether title to the desired parcel is encumbered in any way. *Cf. Amoskeag Bank*, 133 N.H. at 15-16.

It is undisputed that First Eastern lacked record notice of C F Investments' interest in the Property, as C F Investments did not record its interest within the Property's chain of title — *i.e.*, those documents and records recorded in the registry of deeds whose subject matter is the Property and which create direct encumbrances on it. Nevertheless, C F Investments contends that First Eastern was on inquiry notice of its interest because a proper title search in the grantor index under the name "CF Realty Trust" would have revealed an entry dated January 9, 1995, that contained a reference to the bankruptcy judgment. That entry contained the words "mortgage & cert" in the column designated for the *character* of the document recorded, but provided no indication as to the *location* of the encumbered property. Both the mortgage and certificate to which that entry refers contain references to the fact that CF Realty Trust and C F Investments filed for Chapter 11 bankruptcy protection. The certificate states that CF Realty Trust "is and continues to be in existence subject only to its substantive consolidation through the United States Bankruptcy Courts and as its assets being merged into C.F. Investments." Similarly, the mortgage states, in the first paragraph, that "said entities have been substantively consolidated" and provides the docket numbers of the bankruptcy judgment. The second paragraph of the mortgage, however, makes clear that the mortgage encumbered three parcels located in Rye — not the Property here at issue. Whether the mortgage and certificate recorded in the Rye parcels' chains of title gave notice to a subsequent purchaser of an encumbrance on the Property is a question of law, which we review *de novo*. *See Mansur*, 159 N.H. at 223.

Both parties agree that, upon seeing "mortgage & cert" in the grantor index under the name CF Realty Trust, First Eastern had a duty to inquire further into the records associated with the entry to discover whether there was an encumbrance on the property. The substance of their disagreement centers around the trial court's conclusion that the duty of reasonable inquiry is limited to ascertaining the identity of the property encumbered as evidenced by the records; once the title examiner knows that a record reflects encumbrances on a different property, the court reasoned, the examiner had no further duty to review the other information contained within the four corners of that record. C F Investments argues that a reasonable title examination would have "provided ample notice that CF Realty Trust no longer existed," thereby putting First Eastern on inquiry notice of its interest in the subject Property. In C F Investments' view, a proper title search would have revealed its interest in the Property through

three links: first, examination of the grantor index would have disclosed the "mortgage and cert" entry; second, examination of those two documents would have disclosed reference to the bankruptcy consolidation plan and its associated docket numbers; and third, examination of the bankruptcy judgment and its associated filings would have disclosed that CF Realty Trust and C F Investments had been consolidated into the latter entity. Once these documents had been obtained, C F Investments contends, a title examiner would have become aware of its prior interest in the Property.

■ We agree with the trial court, however, that the mortgage and certificate pertaining to the Rye parcels did not place First Eastern on inquiry notice of C F Investments' interest in the Property. As an initial matter, we note that at trial the parties treated this issue as a factual question and presented competing experts to address whether a reasonable title search would have revealed C F Investments' interest. After hearing from the experts, the trial court agreed with the view of the defendants' expert that First Eastern's duty to investigate was limited to ascertaining the property to which the mortgage pertained. Because the mortgage and trustee certificate related to real estate that was located in a different town and that was outside the Property's chain of title, the court found that First Eastern was not required to pursue this line of inquiry further. "[W]e defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." *LLK Trust v. Town of Wolfeboro*, 159 N.H. 734, 739 (2010).

■ ■ Of course, if the trial court adopted an expert's opinion that advanced an erroneous interpretation of law, we would be compelled to correct that interpretation. The trial court made no such error in this case, however, as even a complete reading of the Rye mortgage contract and the accompanying certificate would not have provided First Eastern with facts sufficient to put a person of "ordinary intelligence and prudence" on notice of C F Investments' claimed interest. *See* 77 AM. JUR. 2D *Vendor and Purchaser* § 385, at 434. Although a reasonable mortgagee may have "raised an eyebrow" when presented with information that its putative mortgagor had undergone a bankruptcy at some point in the past, the documents on which C F Investments relies do not support its contention that CF Realty Trust "no longer existed" and lacked authority to convey title to property in its name. As the trial court observed, the mortgage and certificate pertained to a property located in Rye — outside the Property's chain of title. *See In re Colon*, 563 F.3d 1171, 1182 (10th Cir. 2009) ("[C]onstructive notice is limited to the contents of conveyances in the chain of title. If . . . the search of the grantor index leads to a deed by the grantor

of an entirely different piece of property from the one being purchased, the purchaser is not on constructive notice of the contents of that deed."). Moreover, even if those documents reasonably raised concerns regarding a competing claim on the *Property's* title, the grantor index contains scores of entries under the name "CF Realty Trust" — including not only documents evidencing tax liens and redemptions but also deeds and other certificates — recorded *well after* the bankruptcy judgment occurred in 1995 but *before* the conveyance from CF Realty Trust to Fuller in 2002. Contrary to C F Investments' contention that a proper title examination would have revealed that CF Realty Trust "no longer existed," those entries — which would necessarily have been observed during such an examination — indicated that the trust conducted business after the bankruptcy judgment and, thus, would have assuaged any concerns that it lacked authority to encumber the Property under that name. It would be reasonable, in light of those entries, to conclude that CF Realty Trust had emerged from bankruptcy as a viable entity. It is also reasonable to expect diligent owners of real property to record their interests in the correct chain of title. *See* RSA 477:3-a.

C F Investments further contends that the trial court erroneously applied RSA 564-A:7, I (Supp. 2003) (repealed 2004) — a statute that protected third party purchasers dealing with trustees unless they had actual knowledge that the trustee was exceeding his powers — and "reduced the issue in this case to whether or not First Eastern had actual knowledge that the property was not owned by CF Realty." Although the trial court's order cites RSA 564-A:7, it correctly analyzes the issue as being whether a reasonable title search would have revealed C F Investments' competing interest in the Property. To the extent that C F Investments has argued that First Eastern had *actual* knowledge that Fuller exceeded his trustee powers in conveying the property to himself individually, we find no support for that proposition either in its brief or in the record.

Because we affirm the trial court's conclusion that First Eastern lacked inquiry notice of C F Investments' interest in the Property, we have no need to address C F Investments' argument that the trial court erred in weighing the equities to favor the defendants.

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.