Hillsborough-southern judicial district
No. 2012-387

BILDEN PROPERTIES, LLC & a.

v.

S. GERALD BIRIN & a.

Argued: June 4, 2013
Opinion Issued: August 21, 2013

254

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Kenneth D. Murphy* on the brief and orally), for petitioner Bilden Properties, LLC.

*Wacks & McHale PC*, of Lynnfield, Massachusetts (*Kenneth D. Wacks* and *Michelle A. McHale* on the brief, and *John F. Willis* orally), for petitioner TD Bank, N.A.

*Hage Hodes, P.A.*, of Manchester (*Jamie N. Hage* on the brief and orally), for the respondents.

DALIANIS, C.J. The petitioners, Bilden Properties, LLC (Bilden Properties) and TD Bank, N.A. (TD Bank), appeal, and the respondents, S. Gerald and Gail Birin (the Birins), cross-appeal, an order of the Superior Court (*Nicolosi*, J.) finding, among other things, that the petitioners are bona fide purchasers for value, who acquired interests in the subject property without notice of the Birins' mortgage on it. We affirm in part, reverse in part, vacate in part, and remand.

The trial court found or the record supports the following facts. The property at issue is 719 Daniel Webster Highway in Merrimack. On

December 18, 2001, Austin James Properties, LLC acquired title to the property and granted first and second mortgages to Southern New Hampshire Bank. The managing member of Austin James Properties, LLC was Scott Desantis. In 2006, to secure a number of debts Desantis and entities that he controlled owed to the Birins, Austin James Properties, LLC granted a $1 million mortgage on the property to the Birins. The $1 million mortgage far exceeds the property's fair market value.

The Birins' mortgage deed is captioned incorrectly. Although the text of the deed identifies the grantor as "Austin James *Properties*, LLC," the caption identifies the grantor as "Austin James *Development*, LLC." (Emphases added.) Perhaps because of the caption error, the grantor index in the registry of deeds lists Austin James Development, LLC as the grantor of the Birins' mortgage instead of Austin James Properties, LLC.

In May and July 2007, Austin James Properties, LLC granted mortgages on the property to Blackfoot Capital, LLC. The May 2007 mortgage lists the grantor as Austin James Properties, LLC. The May 2007 mortgage encumbers two properties: the subject property and 31 Temple Street in Nashua.

The July 2007 mortgage to Blackfoot Capital, LLC identifies several grantors: Alan James Development, LLC; Austin James Properties, LLC a/k/a Austin James Development, LLC; Desantis Home Development, LLC; Paul James Development, LLC; Scott J. Desantis a/k/a Scott Desantis; and Steven James Development, LLC. The July 2007 mortgage encumbers "[a]ll property owned by Mortgagor in the County of Hillsborough" except for the homestead property owned by Desantis in Nashua.

In November 2007, Austin James Properties, LLC entered into a purchase and sale agreement with Bilden Properties regarding the subject property. Bilden Properties applied to TD Bank for a purchase money loan secured by a mortgage. TD Bank retained the services of an attorney to certify that title to the property was marketable and insurable. The attorney delegated the task of examining title to a title abstractor.

By searching the grantor index under Austin James Properties, LLC, the title abstractor discovered the July 2007 mortgage to Blackfoot Capital, LLC, which identifies one of the grantors as Austin James Properties, LLC a/k/a Austin James Development, LLC. However, she did not search the grantor index for conveyances by Austin James Development, LLC. Instead, she contacted the Office of the New Hampshire Secretary of State and was informed that no entity with that name was registered there.

The title abstractor informed the attorney about the July 2007 mortgage to Blackfoot Capital, LLC noting that the deed "references the current owner with an aka of Austin James Development, LLC"; she asked the

attorney whether she should "run any other names" in the grantor index. The attorney did not instruct her to do so. Because the title abstractor did not search the grantor index under "Austin James Development, LLC," she did not find the Birins' mortgage. Had she done such a search, she would have discovered it.

Ultimately, the attorney certified that title to the property was marketable and insurable, and, in December 2007, Austin James Properties, LLC conveyed the subject property to Bilden Properties by warranty deed for $339,000. Bilden Properties granted a mortgage to TD Bank in the amount of $271,000. As part of the sale, discharges were obtained of the two Southern New Hampshire Bank mortgages in the amount of $156,899.70. In addition, the Blackfoot Capital, LLC mortgages were satisfied in the amount of $75,000.

In 2009, the Birins began foreclosure proceedings on the property. The petitioners moved to temporarily and permanently enjoin the foreclosure and for certain declaratory and equitable relief. A temporary injunction was granted in July 2009. Following a bench trial, the trial court found that the petitioners were bona fide purchasers for value, who purchased the subject property without notice of the Birins' mortgage. Despite this finding, the trial court also ruled that the petitioners' interests in the property were equitably subrogated up to the amount paid to discharge the Southern New Hampshire Bank mortgages. Moreover, although the trial court granted the petitioners' request for a permanent injunction "prohibiting the [Birins] from foreclosing on or exercising any purported right, title or interest against the [subject property]," the trial court stated that their "right of foreclosure is limited by the terms of their mortgage and as a mortgagee junior to the TD Bank mortgage as subrogated." The trial court denied a subsequent motion for clarification, and this appeal followed.

We begin by deciding whether, as the Birins contend, the trial court erred when it found that the petitioners were bona fide purchasers for value, who purchased the property without notice of the Birins' mortgage.

▮ New Hampshire is a "race-notice" jurisdiction. *C F Invs. v. Option One Mortgage, Corp.*, 163 N.H. 313, 315 (2012). In a "race-notice" jurisdiction, "priority is given to a subsequent purchaser who acquires an interest without notice of the prior interest, but only if the subsequent purchaser also records that subsequent interest before the owner of the prior interest records that prior interest." 14 R. POWELL, POWELL ON REAL PROPERTY § 82.02[1][a](3) (Michael Allan Wolf ed., 2013); *see* RSA 477:3-a (2001). Thus, in this case, the Birins' mortgage is not enforceable against the petitioners

if the petitioners acquired their interest in the property without notice of the Birins' mortgage and the petitioners recorded their interest first. *See* POWELL, *supra* § 82.02[1][c][iii].

■ Notice may be of three types: (1) actual; (2) record; and (3) inquiry. *Id.* § 82.02[1][d]; *see C F Invs.*, 163 N.H. at 316. "Actual notice" refers to "information concerning the fact — as, for example, concerning the prior interest, claim, or right — directly and personally communicated to the party." POWELL, *supra* § 82.02[1][d][i] (quotation omitted).

■ "Record notice" is "notice arising solely from the record." *Id.* § 82.02[1][d][ii]. "Record notice" is sometimes referred to as "constructive notice." *See id.* "A subsequent purchaser . . . is on constructive notice of all claims revealed by the record, regardless of whether [the subsequent purchaser] ever looks at the record or ever sees the information contained there." *Id.*; *see Thomas v. Finger*, 144 N.H. 500, 503 (1999) ("a real estate purchaser will be charged with constructive knowledge of what may be revealed by an examination of the record" (quotation omitted)). "Record notice" is "notice inferred from the record." POWELL, *supra* § 82.02[1][d][ii] (quotation omitted).

■ "Inquiry notice" is notice that arises from a legal inference. *Id.* § 82.02[1][d][iii]. "Inquiry notice" is notice of a fact that is "sufficiently 'curious' or 'suspicious,' according to normal human experience, that the purchaser should, as a matter of law, make an investigation into it." *Id.*; *see Thomas*, 144 N.H. at 503. "If upon making the investigation into this first fact a second fact, namely that another person has a claim to the title of the property, is revealed, then the purchaser is considered to have inquiry notice of the claim itself." POWELL, *supra* § 82.02[1][d][iii]; *see Thomas*, 144 N.H. at 503. "In other words, because of the nature of the first fact, of which the purchaser has actual or constructive notice, a rebuttable inference is made that the purchaser has notice of the second fact. However, if a reasonable inquiry would not reveal the second fact, then the inference is rebutted." POWELL, *supra* § 82.02[1][d][iii]; *see Thomas*, 144 N.H. at 503.

Actual notice is not an issue in this case. Whether the records in the petitioners' chain of title gave notice of the Birins' prior mortgage to a subsequent purchaser is a question of law, which we review *de novo*. *See C F Invs.*, 163 N.H. at 317.

■ We conclude that the petitioners had record notice of the July 2007 mortgage held by Blackfoot Capital, LLC because that mortgage deed was in the petitioners' chain of title. *See id.* That deed lists one of the grantors of the mortgage as Austin James Properties, LLC a/k/a Austin James Development, LLC. Moreover, we hold that notice of that fact — that

Austin James Properties, LLC used or was known by a different name —
constituted notice of a fact that is "sufficiently 'curious' or 'suspicious,'
according to normal human experience, that [a] purchaser should, as a
matter of law, make an investigation into it." POWELL, *supra*
§ 82.02[1][d][iii]. Had the grantor index been searched under the name
"Austin James Development, LLC," the Birins' mortgage would have been
found. Accordingly, there is a rebuttable inference that the petitioners
knew of the Birins' mortgage. *See id.*

■ That inference may be rebutted in this case only if searching the
grantor index under the name "Austin James Development, LLC" does not
constitute a "reasonable inquiry." The petitioners argue that such a search
would not have constituted a "reasonable inquiry" because information
from the Secretary of State established that no entity named "Austin
James Development, LLC" existed. However, New Hampshire has rejected
the theory that an unregistered foreign limited liability company does not
exist for legal purposes. *See* RSA 304-C:63, I, :69, II(a) (2005) (repealed and
reenacted as RSA 304-C:174, I, :180, II(a) (Supp. 2012)); *cf. Zenane, Inc. v.
Tofer*, 127 N.H. 366, 367 (1985) (discussing similar statutory scheme related
to unregistered corporations).

■ Under New Hampshire law, creating a mortgage, securing debts, and
owning real property do not constitute "doing business" for the purposes of
the statute requiring foreign limited liability companies to register with the
secretary of state. RSA 304-C:63, I(g), (h), (i). Similarly, by statute, "[t]he
failure of a foreign limited liability company to register in New Hampshire
does not impair . . . [t]he validity of any contract or act of the foreign limited
liability company." RSA 304-C:69, II(a). Although we need not decide
whether the title abstractor or her supervising attorney was negligent, we
conclude that it was not reasonable, as a matter of law, to cease investigat-
ing upon learning that Austin James Development, LLC was not registered
with the Secretary of State.

■ In a related argument, the petitioners assert that we held in *C F
Investments* that even if a search of the records in a property's chain of title
raises concerns about a competing claim, there is no inquiry notice of that
claim "if those concerns were 'assuaged' by other information obtained by
the title examiner." *See C F Invs.*, 163 N.H. at 318-19. This was not our
holding. In that case, the grantor was CF Realty Trust. *Id.* at 315. However,
C F Investments had a prior, unrecorded interest in the property as a
result of bankruptcy proceedings and a plan of reorganization under which ·
it succeeded to all of CF Realty Trust's assets. *Id.* at 314-15. A search in the
grantor index under "CF Realty Trust" revealed an entry that referred to

a mortgage and certificate that were not within the subject property's chain of title. *Id.* at 317. We held that the mortgage and certificate did not place the mortgagee on inquiry notice of C F Investments' interest in the subject property because those documents were outside of its chain of title. *Id.* at 318; *see In re Colon*, 563 F.3d 1171, 1182 (10th Cir. 2009) ("[C]onstructive notice is limited to the contents of conveyances in the chain of title. If . . . the search of the grantor index leads to a deed by the grantor of an entirely different piece of property from the one being purchased, the purchaser is not on constructive notice of the contents of that deed.").

We further observed:

> [E]ven if those documents reasonably raised concerns regarding a competing claim on the Property's title, the grantor index contains scores of entries under the name "CF Realty Trust" — including not only documents evidencing tax liens and redemptions but also deeds and other certificates — recorded well after the bankruptcy judgment . . . but before the conveyance [at issue]. Contrary to C F Investments' contention that a proper title examination would have revealed that CF Realty Trust "no longer existed," those entries — which would necessarily have been observed during such an examination — indicated that the trust conducted business after the bankruptcy judgment and, thus, would have assuaged any concerns that it lacked authority to encumber the Property under that name.

*C F Invs.*, 163 N.H. at 319 (quotation and emphases omitted).

This dictum should not be mistaken for a holding that had the mortgage and certificate been in the chain of title, they would not have provided inquiry notice of C F Investments' prior, unrecorded interest. Because the mortgage and certificate were not within the chain of title, we never addressed whether their references to the bankruptcy proceedings constituted notice of facts that are "sufficiently 'curious' or 'suspicious,' according to normal human experience, that [a] purchaser should, as a matter of law, make an investigation into [them]." POWELL, *supra* § 82.02[1][d][iii]. Nor did we address whether a reasonable investigation would have revealed C F Investments' prior unrecorded interest.

 In the instant matter, we hold that searching the grantor index under the name "Austin James Development, LLC" constituted a "reasonable inquiry" as a matter of law. *See C F Invs.*, 163 N.H. at 316 (noting that a "proper search" of a property's chain of title "includes tracing the property back to a firm root in title and researching the grantor index from that date forward for out-conveyances"). "[I]ndexes are the starting point for a

subsequent purchaser or title examiner." *Midcountry Bank v. Krueger*, 782 N.W.2d 238, 249-50 (Minn. 2010). Because one of the records in the property's chain of title gave a subsequent purchaser notice that Austin James Properties, LLC used a different name, a reasonable inquiry involved, at a minimum, searching the grantor index under that different name. *Cf. Greenpoint v. Schlossberg*, 888 A.2d 297, 321 (Md. 2005) ("Unless he has some exogenous knowledge or actual notice of other name or name variants by which to search, an examiner who searches the index . . . will search for the name under which the property is titled."). Accordingly, the inference that the petitioners had notice of the Birins' mortgage is not rebutted. *See* POWELL, *supra* § 82.02[1][d][iii]. Thus, the petitioners are not bona fide purchasers for value, and we reverse the trial court's contrary determination.

Because we decide that the July 2007 mortgage to Blackfoot Capital, LLC gave the petitioners inquiry notice of the Birins' mortgage, we need not decide whether the Birins' mortgage was properly recorded. The petitioners are deemed to have notice of the Birins' mortgage regardless of whether the mortgage was properly recorded. *See Thomas*, 144 N.H. at 503 ("While real estate purchasers are typically charged with constructive notice of liens that are properly recorded by the time of closing, such notice may also arise from the totality of circumstances that would place a reasonable buyer on notice that further inquiry should be made to ensure that no cloud on the title exists." (citation omitted)). In other words, the proper recording of the Birins' mortgage is not required for there to be inquiry notice of it. Therefore, we do not address the parties' arguments regarding whether the fact that the Birins' mortgage was indexed under the name of Austin James Development, LLC means that it was improperly recorded.

We also do not address the parties' arguments regarding whether the title abstractor was an agent of the petitioners such that her knowledge and conduct may be imputed to them. Record and inquiry notice are legal presumptions: they apply regardless of whether a subsequent purchaser ever looks at the record, sees the information contained there, or personally conducts a reasonable inquiry. *See* POWELL, *supra* §§ 82.02[1][d][ii], [iii].

We next address whether, as the Birins contend, the petitioners are not entitled to equitable subrogation. We acknowledge that the trial court had no need to reach the equitable subrogation issue once it concluded that the petitioners were bona fide purchasers. However, because the trial court *did* reach the issue, we view the parties' arguments about equitable subrogation as properly before us.

■ The Birins assert that "[i]f this Court holds that the title searchers in this action were negligent and that [they] acted as [the petitioners'] agents, or that [the petitioners] were negligent in not performing a title search," then the petitioners are not entitled to equitable subrogation. The trial court did not find culpable negligence on the part of the attorney hired by TD Bank to certify title. Even if we assume, without deciding, that the attorney was negligent, and further assume that such negligence could be imputed to TD Bank, as we have previously explained, "negligence on the part of a surety does not invalidate the right to subrogate." *Chase v. Ameriquest Mortgage Co.*, 155 N.H. 19, 28 (2007); *see Fifield v. Mayer*, 79 N.H. 82, 85-86 (1918).

Thus, we uphold the trial court's determination that the petitioners' interests in the property are equitably subrogated up to the amount paid to discharge the prior mortgages held by Southern New Hampshire Bank. Accordingly, although the Birins have a right to foreclose on the property, their right is subject to the petitioners' interests as subrogated in the amount of $156,899.70 (the amount paid to Southern New Hampshire Bank to discharge its mortgages). Although the petitioners request that we determine the rate of interest that applies to that sum, we decline to do so in the first instance. We remand to the trial court solely to determine the rate of interest to apply to the $156,899.70 that must be paid to the petitioners at foreclosure.

In sum, we reverse the trial court's determination that the petitioners were bona fide purchasers for value, who took the property without notice of the Birins' interest in it. Because we conclude that the petitioners purchased the subject property subject to the Birins' mortgage, we uphold the trial court's decision to the extent that it allowed the Birins to foreclose. To the extent that the trial court granted a permanent injunction prohibiting the Birins from foreclosing, we vacate that permanent injunction. Additionally, we affirm the trial court's determination that the petitioners' interests are equitably subrogated up to the amount paid to discharge the mortgages held by Southern New Hampshire Bank. Because we decline to address, in the first instance, the parties' arguments regarding the interest rate that should apply to the amount of money the Birins must pay the petitioners at foreclosure, we remand that issue to the trial court for further proceedings.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.